UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW STONECYPHER, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>IASCO FLIGHT TRAINING INC., a California corporation,<br><br>　　　　Defendant. | No. 2:17-cv-02409-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Matthew Stonecypher ("Plaintiff") seeks damages from his former employer, Defendant IASCO Flight Training, Inc. ("Defendant" or "IASCO") stemming from his six-month tenure as a certified flight instructor for Defendant. According to Plaintiff, he was retaliated against and ultimately terminated for complaining that Defendant, in operating its business, was violating regulations enacted pursuant to the Federal Aviation Act of 1958, 49 U.S.C. § 40103, et seq. ("FAA"). Plaintiff further claims that Defendant violated various wage and hour laws in failing to pay overtime.

Presently before the Court is Defendants' Motion to Dismiss, made pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that Plaintiff's Sixth Cause of Action is entirely preempted by federal law and specifically by applicable FAA

1

regulations.[1] In addition, Plaintiffs argue that the Seventh and Eighth Causes of action are also preempted to the extent they arise out of or relate to the FAA. Finally, Defendants move to strike certain portions of Plaintiff's complaint that relate solely to issues preempted by the regulations to avoid the danger of undue confusion, delay or prejudice. As set forth below, Defendants' Motion is GRANTED.[2]

## BACKGROUND[3]

Plaintiff was employed for Defendant IASCO, a flight training school in Redding, as a Certified Flight Instructor ("CFI") for about six months before he was terminated on or about August 22, 2017. Plaintiff claims, inter alia, that from almost the inception of his employment with Defendant, IASCO would regularly schedule Plaintiff and other CFIs for shifts that exceeded eight hours of flight training within a consecutive twenty-hour period, in violation of FAA regulations. See 14 C.F.R. 61.195. Plaintiff also noted that of Defendant's approximately 180 enrolled students, virtually all were living in the United States on student visas from China and could not adequately read, speak, write, and understand the English language as also required by FAA regulations. 14 C.F.R. 61.83(c). According to Plaintiff, more than 30 percent of Defendant's students lacked even a basic understanding of English. On at least one occasion language difficulties caused one of Plaintiff's Chinese students to misinterpret a control tower flight command and to nearly cause an accident.

///

---

[1] Defendant also moved to dismiss Plaintiff's Fifth Cause of Action, for retaliation in contravention of the FAA's whistleblower protection, as codified by 49 U.S.C. § 42121, on grounds that § 42121 does not confer a private cause of action. In his Opposition, Plaintiff concedes that issue and agrees not to oppose dismissal of the Fifth Cause of Action. Accordingly, that argument need not be further addressed.

[2] Having determined that oral argument was not of material assistance, the Court ordered the Motion submitted on the briefs pursuant to Local Rule 230(g).

[3] Unless otherwise indicated, the facts set forth in this Section are taken, at times verbatim, from the allegations contained in Plaintiff's Complaint. ECF No. 1.

In addition to potential safety concerns concerning IASCO's Chinese students, Plaintiff also claims that he encountered various aircraft maintenance issues while working for Defendant. Both he and other CFIs commonly observed that fuel indicators in Defendant's airplanes were faulty, causing the gauges to indicate the tanks were empty, even when they were not, again in contravention of FAA regulations which require that such gauges accurately reflect fuel quantity. See 44 C.F.R. 91.205(b)(9). Plaintiff and other CFIs also observed other equipment issues, including broken altitude indicators, but claim that Defendant's management consistently deferred maintenance. Plaintiff believed that the faulty indicators posed a particular risk to new student pilots beginning flight instruction. According to Plaintiff, over the course of his employment he reported the above issues to his direct supervisor Shannon Fiest on numerous occasions, but to his knowledge nothing was done in remediation. In addition, on or about August 6, 2017, Plaintiff met with IASCO's Flight Chief for over an hour to detail these issues, expressing his belief that they "were having a serious effect on the safety of flight operations, and that IASCO was at risk of having a serious accident." Pl.'s Compl., ¶ 34.

That same day, Plaintiff claims that another CFI discovered that the auto-pilot on a training plane had not been disabled as required by 14 C.F.R. 25.1329. When the CFI reported this, Defendant's maintenance crew confirmed that the system had not been disconnected. Four days later, Plaintiff was asked to test fly the airplane after it had been taken out of service to address the auto-pilot issue. Plaintiff did not believe the airplane was flying properly, and although he did not approve the airplane maintenance log, he discovered that it had nonetheless been brought back into service the next day. Then, some ten days later, on August 17, 2017, while flying an IASCO plane with two of his students, Plaintiff unexplainedly lost control of the plane and nearly crashed. At this point Plaintiff claims he feared not only for his own personal safety, but also for the loss of his FAA license if he continued to violate FAA regulations. When he expressed those sentiments to his supervisor, he states she advised him to consider quitting.

Plaintiff was off work for the following three days, after which he states he contacted the FAA in the morning of August 21, 2017, and was advised to report all of the issues he identified in writing. He subsequently informed IASCO management about his contact with the FAA and states he was terminated about thirty minutes later.

Plaintiff filed the instant lawsuit on November 15, 2017. His complaint includes allegations of various wage and hour violations that are not the subject of this motion. Instead, IASCO moves to dismiss and/or strike Plaintiff's causes of action that pertain to airplane safety issues, which Defendant asserts are preempted by the FAA. According to Defendant, preemption precludes Plaintiff's Sixth Cause of Action, which alleges that he was retaliated against for engaging in protected activity protected by statute in accordance with California Labor Code § 1102.5. In addition, to the extent that Plaintiff's retaliation claims, as alleged in his Seventh and Eighth Causes of Action, are rooted on FAA safety issues subject to whistleblowing, as opposed to wage and hour issues, IASCO seeks to dismiss those claims as well. Finally, Defendant also asks the Court to strike all allegations of the Complaint bearing upon flight safety issues on grounds that because safety issues are preempted by the FAA, the allegations have no place in this lawsuit.

## STANDARD

### A. Motion to Dismiss

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors

merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

### B. Motion to Strike

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations omitted). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Id.

## ANALYSIS

It is well established that Congress has the power to preempt state law. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). It may do so either expressly or impliedly. Id. Because nothing in the FAA expressly preempts state regulation of air safety, FAA preemption, if any, must be implied. Montalvo v. Spirit Airlines, 508 F.3d 464, 470 (9th Cir. 2007). Implied preemption takes two forms: conflict preemption and field preemption. Conflict preemption, which is not asserted in this case, exists when a

state law actually conflicts with federal law or becomes an obstacle to federal law being carried out. Field preemption, on the other hand, "exists when federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'". Montalvo, 508 F.3d at 470, citing Cipollone, 505 U.S. at 516. Field preemption therefore "occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law." Id.

Here, Defendant asserts the field preemption precludes Plaintiff's state law claims for retaliation and wrongful termination to the extent they bear on airline safety issues. In Montalvo, the Ninth Circuit recognized that field preemption indeed applies to such issues, stating that "the regulations enacted by the Federal Aviation Administration, read in conjunction with the FAA itself, sufficiently demonstrate an intent to occupy exclusively the entire field of aviation safety and carry out Congress' intent to preempt all state laws in this field." Montalvo, 508 F.3d at 471. This is because the "purpose, history and language of the FAA" demonstrate "that Congress intended to have a single, uniform system for regulating aviation safety." Id. To that end, as Montalvo noted, 'it is clear that Congress intended to invest the Administrator of the Federal Aviation Administration with the authority to enact exclusive air safety standards.," such that the FAA is "the sole arbiter of air safety." Id. at 472.

A Ninth Circuit case decided subsequent to Montalvo, Ventress v. Japan Airlines, 747 F.3d 716 (9th Cir. 2014), provides further clarification as to the extent of FAA preemption in the airline safety arena. In Ventress, a former flight engineer claimed he was retaliated against, in the form of being prevented from working and being subjected to unnecessary psychiatric evaluations) by Japan Air Lines ("JAL") for raising safety concerns as to a fellow pilot's medical fitness to operate an aircraft. That engineer, like Plaintiff herein, claimed JAL's conduct constituted both unlawful retaliation in violation of California's Whistleblower Statute, Cal. Labor Code § 1102.5, and constructively wrongful termination in violation of California public policy. He further alleged, as Plaintiff
///

7

does in this matter, that the FAA statute governing whistleblower retaliation, 49 U.S.C. § 42121, was also implicated.

Although the court was careful to note that "the FAA does not preempt all state law tort actions touching air travel," it nonetheless concluded that the engineer's state law claims were "preempted because they require the factfinder to intrude upon the federally occupied field of aviation safety by deciding questions of pilot medical standards and qualifications." Id. at 719. This was because any inquiry into the medical fitness of either the plaintiff or his co-pilot "intrudes upon the federally occupied field of pilot safety and qualifications that Congress has reserved for the [FAA], and therefore 'impermissibly subjects state law to supplementation by, and variation among, state laws." Id. at 722. The court limited its holding by recognizing that not all retaliation and constructive termination claims brought under California law are preempted by the FAA. Instead, only such "claims that encroach upon, supplement, or alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating the field" are precluded. Id. at 722-723.

The holding of Ventress applies squarely to this matter. The gravamen of Plaintiff's Complaint is that he took a stance on safety issues at his workplace that caused Defendant to ultimately terminate his employment. As IASCO notes, the Court will need to examine the various safety incidents Plaintiff complained about to determine whether they were indeed violations of the FARs or instead were due to Plaintiff's own negligence or other reasons. In making those determinations, the Court would have to decide whether FAA regulations were violated, and whenever the Court has to look at whether a safety threat existed, preemption applies. Id.

In Plaintiff's Sixth Cause of Action, for example, which asserts retaliation in violation of California Labor Code § 1102.5, Plaintiff claims that IASCO retaliated against him because he disclosed what he believed to be violations of the FAA regulations. Pl.'s Compl., ¶¶ 91-94. As such, that cause of action requires an analysis of the regulations

through the lens of a state law claim in an area where "the federal interest [in aviation safety] is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." French v. Pan Am Express, 869 F.2d 1, 5 (1st Cir. 1989). Retaliation as alleged in the Sixth Cause of Action therefore triggers preemption because it "require[s] the factfinder to intrude upon the federally occupied field of aviation safety . . . " Ventress, 747 F.3d at 719.

The Seventh and Eighth Causes of Action, for retaliation in violation of California Labor Code § 98.5 and for wrongful termination in violation of California public policy, respectively, similarly encroach upon airline safety. They too are based, in part, on Plaintiff's allegation that he was retaliated against, and ultimately terminated, for disclosing his belief that Defendant had violated FAA regulations.[4] Consequently, those assertions are also preempted.[5] Consequently, those assertions of the Seventh and Eighth Causes of Action pertaining to safety issues must be stricken, as must all factual allegations contained in the Complaint relating to safety concerns.

Plaintiff's arguments in advocating for a different result are not persuasive. Plaintiff's primary argument against preemption in this matter is that air safety concerns do not call for complete preemption, with such preemption found only under three federal statutory schemes that do not include the FAA.[6] As indicated above, however, Defendant IASCO does not contend here that the FAA triggers complete preemption; it argues only that principles of implied preemption come into play given the safety concerns raised by Plaintiff's Complaint, and that Plaintiff's claims therefore implicate

---

[4] In addition to airline safety issues, both claims also implicate California wage and hour concerns and Defendant does not assert that preemption applies to those areas.

[5] Whether or not Defendant may have had independent non-discriminatory and reasonable grounds for terminating Plaintiff does not detract from the fact that Plaintiff's claims squarely implicate safety concerns. Moreover, at least according to Defendants' papers, even those grounds may require the interpretation of FAA regulations.

[6] While the Airline Deregulation Act ("ADA") of 1978 did amend the FAA to include economic deregulation provisions, and to prohibit any state provisions related to the price, route or service of an air carrier (see 49 U.S.C. § 41713(b)), the complete preemption provisions of the ADA in that regard have no bearing upon the implied field preemption which applies to air safety issues as recognized by Montalvo and Ventress, supra.

9

implied field preemption.  Kinzer v. Allegiant Air, LLC, 215 F. Supp. 3d 1018 (D. Nev. 2016), relied upon by Plaintiff, is also unhelpful because it recognized that FAA regulations do not completely preempt all state-law claims relating to aviation safety (id. at 1023-24), and in so finding in no way ruled out the implied field preemption advocated by Defendant herein.  Additionally, while Plaintiff argues that the California Supreme Court's decision in Green v. Ralee Engineering Co., 19 Cal. 4th 66 (1992) supports his claim that FAA safety regulations should be included as a source of fundamental public policy that limits an employer's right to discharge an at-will employee (and therefore supports Plaintiff's Eighth Cause of Action for wrongful termination in contravention of such policy) that case predates the Ninth Circuit's holdings in Montalvo and Ventress, which this Court finds dispositive.

## CONCLUSION

For all the above reasons, Defendants' Motion to Dismiss and to Strike (ECF No. 6) is GRANTED.  Plaintiff may amend his FAC, should he choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed.  Failure to file an amended pleading within those time parameters will result in the dismissal, with prejudice, of that affected cause of action without further notice.

IT IS SO ORDERED.

Dated:  September 16, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE