Rob Hennig (SBN 174646)
rob@employmentattorneyla.com
Brandon Ruiz (SBN 264603)
brandon@employmentattorneyla.com
Dat Tommy Phan (SBN 316813)
dat@employmentattorneyla.com
HENNIG RUIZ & SINGH, P.C.
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Fax: (213) 310-8302

Attorneys for Plaintiff Matthew Stonecypher

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW STONECYPHER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>IASCO FLIGHT TRAINING, INC, a California corporation,<br><br>Defendants. | Case No. 2:17-CV-02409-MCE-EFB<br><br>**[PROPOSED] SECOND AMENDED COMPLAINT FOR:**<br><br>1. **Failure to Provide Rest and Meal Breaks, Cal. Lab. Code §§ 226.7 and 512;**<br>2. **Failure to Pay Minimum Wage and Overtime, Cal. Lab. Code §§ 510 and 1194;**<br>3. **Failure to Provide Accurate Itemized Wage Statements, Cal. Lab. Code § 226(a);**<br>4. **Waiting Time Penalties, Cal. Lab. Code §§ 201-203;**<br>5. **Penalties under Cal. Lab. Code §§ 2698, et seq. [PAGA]**<br>6. **Retaliation and Wrongful Termination in Violation of Cal. Lab. Code § 1102.5;**<br>7. **Retaliation and Wrongful Termination in Violation of Cal. Lab. Code § 98.6;**<br>8.<br>8. **Wrongful Termination in Violation of Public Policy**<br>9. **Solicitation of Employee by Misrepresentation, Cal. Lab. Code § 930**<br><br>**AND DEMAND FOR JURY TRIAL** |

1

HENNIG
RUIZ &
SINGH

Plaintiff, MATTHEW STONECYPHER, individually and on behalf of other members of the general public similarly situated, respectfully submits the instant Second Amended Complaint for Damages and Demand for Jury Trial and alleges as follow:

**STATEMENT OF JURISDICTION**

1.      This Court has subject matter jurisdiction based upon diversity of citizenship, because Plaintiff is a citizen of Cambria County in the State of Pennsylvania and Defendant IASCO Flight Training, Inc. is incorporated under the laws of the State of California and maintains its corporate headquarters and principal place of business in the City Redding in Shasta County, California. Shasta County is located within the Eastern District of California. The aggregate amount of Plaintiff's retaliation and wage and hour claims exceeds the $75,000 amount in controversy requirement under 28 U.S.C. § 1332.

2.      This Court has supplemental jurisdiction over all other pendent state claims alleged in this action under 28 U.S.C. § 1367, because they form part of the same case or controversy as the aforementioned claims.

**INTRODUCTION**

3.      Plaintiff   MATTHEW   STONECYPHER   (hereinafter   "Plaintiff"   or "Stonecypher") files this Complaint for Damages related to Plaintiff's former employment with Defendant IASCO FLIGHT TRAINING, INC. (hereinafter "IASCO" or "Defendant"), for unpaid compensation, wages, bonuses and commissions, consequential damages, general damages, punitive damages, statutory penalties, restitution, injunctive relief, costs, and reasonable attorneys' fees.

4.      Plaintiff brings causes of action for (1) failure to provide rest and meals breaks in violation of Cal. Lab Code §§ 226.7 and 512; (2) failure to pay minimum wage and overtime in violation of Cal. Lab. Code §§ 510 and 1194; (3) failure to provide accurate

2

HENNIG
RUIZ &
SINGH

itemized wage statements in violation of Cal. Lab. Code § 226(a); (4) failure to pay all wages due upon discharge in violation of Cal. Lab. Code §§ 201-203; (5) penalties under Cal. Lab. Code §§ 2698, et seq. [Private Attorney General Act [PAGA]); (6) retaliation in violation of Cal. Lab. Code § 1102.5; (7) retaliation in violation of Cal. Lab. Code § 98.6; (8) wrongful termination in violation of public policy; and (9) solicitation of an employee by misrepresentation in violation of Cal. Lab. Code § 930.

### **VENUE**

5.     The Eastern District of California has personal jurisdiction over Defendant, because the corporate Defendant has qualified with the California Secretary of State to do business in the State of California, and is doing business within Shasta County, California. Each of the acts and omissions alleged and each violation of law, as alleged, occurred within the Eastern District of California and gives rise to the claims alleged herein.

6.     The Eastern District of California has proper venue because each of the acts and omissions alleged and each violation of law, as alleged, occurred within this District, pursuant to 28 U.S.C. §§ 1391(b) and (c).

7.     Pursuant to Eastern District of California, Local Rule 3-120, this action is filed in Sacramento, California, because the facts and circumstances of this action arose in Shasta County, California.

### **PARTIES**

8.     Plaintiff MATTHEW STONECYPHER (hereinafter "Plaintiff" or "Stonecypher") is a former employee of Defendant IASCO FLIGHT TRAINING, INC. (hereinafter "IASCO" or "Defendant") and, at all times material to this action, was working for Defendant as a Certified Flight Instructor ("CFI") in Shasta County, California.

9.     RICHARD KIPP ("Kipp") from IASCO Human Resources first reached out to Plaintiff on or around December 2016 to recruit him to move down to Redding, California to join IASCO as a CFI. Kipp explained that CFIs would be paid well, scheduled shifts

3

would be shorter and predicable, and that Plaintiff would only have to provide flight instruction. Plaintiff declined the offer, citing prior commitments with his then employer in Oregon. In or around early January 2017, Kerr again reached out to Plaintiff to recruit him to join IASCO.  In addition to touting the benefits of joining IASCO, Kipp emphasized that Plaintiff would no longer have to worry about making ends meet and offered a $1,500 relocation assistance payment to aid Plaintiff and his family's move down to Redding, California. This time, Plaintiff accepted IASCO's offer, notified his then current employer of his decision, and prepared his family of six for the move. On or about February 7, 2017, Plaintiff moved his entire family out of Oregon to the City of Redding in Shasta County, California for the purpose of starting his new employment with Defendant IASCO.

10.     While employed by Defendant, and at all times relevant to this action, Plaintiff was the sole, income earner for his household. Plaintiff began employment for Defendant on or about February 13, 2017 to about August 22, 2017 when was he was unlawfully terminated.

11.     Several days after he was terminated, Plaintiff and his family moved out of Redding, California because, without his sole source of household income, his family of six could not afford to continue to live in California. Plaintiff drove his family across the country, and moved back home to live with his parents in Pennsylvania. On or about September 3, Plaintiff began looking for new employment in Pennsylvania as a CFI.

12.     On or about October 2, 2017 Plaintiff began working part-time as a CFI for Airquest Aviation in Butler, Pennsylvania. At the time this complaint was originally filed, Plaintiff worked about 20 hours a month for his new employer. Plaintiff is a citizen of the State of Pennsylvania. The City of Johnstown in Cambria County is located in the Western District of Pennsylvania.

13.     Defendant IASCO Flight Training, was at all times relevant to this action, a California corporation, with its corporate headquarters at 6460 Lockheed Drive, Redding, California 96002. Plaintiff is informed and believes, and thereon alleges that Defendant has qualified to do business in the State of California, and at all times relevant to this action

4

HENNIG
RUIZ &
SINGH

was doing business in Shasta County, California. Specifically, Defendant operated a flight school in the City of Redding in Shasta County, California.

14.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant, each and every Defendant was an agent and/or employee of each and every other Defendant. In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment, and was acting with the consent, permission, and authorization of each remaining Defendant. All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

15.     As a direct and proximate result of the unlawful acts of Defendants, Plaintiff has suffered and continues to suffer from loss of earnings, humiliation, embarrassment, emotional pain and suffering, and other damages in amounts not yet ascertained, but subject to proof at trial.

**STATEMENT OF FACTS**

16.     On or around February 13, 2017, Plaintiff Matthew Stonecypher began working as a Certified Flight Instructor ("CFI") at IASCO Flight Training in its office in Redding, California. During his first week, Plaintiff participated in a Monday to Friday 5-day training program for new flight instructors. During this week, Plaintiff was paid on an hourly basis.

17.     JITESH BAHL ("Bahl") is or was the IASCO Flight Chief, and one of Plaintiff's supervisors at IASCO's flight training school in Redding, California. On or about August 7, 2017, Plaintiff met with Bahl and shared his intent to contact the Federal Aviation Administration ("FAA") to report IASCO's violations of FAA regulation. Those alleged violations included forcing flight instructors to: (1) provide flight instruction for more than 8 hours in a 24-hour period in violation of 14 CFR 61.195; and (2) teach flight students that lacked the ability to read, speak, write, and understand the English language in violation of 14 CFR 61.83(c). On or about August 21, 2017, Plaintiff emailed Bahl, Richard Kipp,

5

HENNIG
RUIZ &
SINGH

and CEO John Fitzpatrick, to tell them that Plaintiff had spoken to an FAA representative about the violations. Defendant Kipp called Plaintiff about thirty minutes later and fired him.

18.     RICHARD KIPP ("Kipp"), is or was the Recruitment Coordinator, and Plaintiff's primary point of contact with IASCO's Human Resources Department. On or about August 7, 2017, Plaintiff met with Kipp and Bahl and shared his intent to contact the FAA to report IASCO's alleged violations of FAA regulations. Those violations included forcing flight instructors to: (1) provide flight instruction for more than 8 hours in a 24-hour period in violation of 14 CFR 61.195; and (2) teach flight students that lacked the ability to read, speak, write, and understand the English language in violation of 14 CFR 61.83(c). On or about August 18, 2017, Kipp called Plaintiff and sought unsuccessfully to persuade Plaintiff to approve an airplane maintenance log that Plaintiff reasonably believed violated FAA regulations. On or about August 21, 2017, Plaintiff emailed Bahl, Kipp, and CEO John Fitzpatrick, to tell them that Plaintiff had spoken to an FAA representative about the violations. Defendant Kipp called Plaintiff about thirty minutes later and fired him.

19.     MARY KELLER is or was the trainer of flight instructors at IASCO Flight Training. Keller trained Plaintiff. Keller told Plaintiff that he would not be paid overtime for working weekends. Keller has told at least one CFI not to contact the FAA about any safety violations at IASCO.

20.     JOHN FITZPATRICK, is an individual. He is or was the Chief Executive Officer (CEO) at IASCO. CEO Fitzpatrick received Plaintiff's email explaining that Plaintiff had spoken to an FAA representative and discussed with the representative the FAA regulations Plaintiff believed IASCO was violating. Those violations included forcing flight instructors to: (1) provide flight instruction for more than 8 hours in a 24-hour period in violation of 14 CFR 61.195; and (2) teach flight students that lacked the ability to read, speak, write, and understand the English language in violation of 14 CFR 61.83(c). Defendant Richard Kipp called Plaintiff about thirty minutes later and fired him. After Plaintiff's wrongful termination, Defendant CEO Fitzpatrick met with Plaintiff and sought

HENNIG
RUIZ &
SINGH

unsuccessfully to persuade Plaintiff to approve an airplane maintenance log that Plaintiff reasonably believed violated FAA regulations.

21.     On or around February 17, 2017, Keller informed Plaintiff and two other new flight instructors that they were to report for additional training that weekend to do simulator sessions. Plaintiff asked if he was getting paid for the weekend time worked. Keller indicated that everyone had to work that weekend and no one would be compensated extra. Around this time, Defendant IASCO began treating Plaintiff as an exempt employee.

22.     Plaintiff is informed and believes, and thereon alleges that according to FAA regulations, including but not limited to, 14 CFR 61.195, a CFI may not conduct more than 8 hours of flight training within a 24 consecutive hour period. A CFI that violates this regulation may be subjected to a license revocation and/or additional sanctions by the FAA.

23.     Since the beginning of Plaintiff's employment at IASCO, Defendant IASCO would erratically schedule its flight instructors for shifts, often allowing CFIs to find out about scheduled shifts last minute. Plaintiff has expressed IASCO's agents, including the scheduling supervisor, Miranda, his belief that CFIs should be treated as non-exempt employees and be entitled to overtime pay. Supervisor Miranda's response was that as a salaried employee, Plaintiff must be available for any scheduled shifts, and will not get paid extra.  Defendant would regularly schedule Plaintiff and its other CFIs to extended or even consecutive shifts that exceeded 8 hours of training within a given 24-hour period. For example, Plaintiff has been scheduled for 11 hours of flight training. This may not even include the time Plaintiff spent waiting at the airport terminal for an airplane to become available for instructional use. Plaintiff was also scheduled for consecutive and/or close shifts which would require that Plaintiff violate FAA regulations limiting the number of instructional flight hours in a 24-hour period.

24.     As a CFI, Plaintiff was hired to provide flight and ground training to Defendant's flight students. Plaintiff is informed and believes that Defendant enrolled approximately 180 students, virtually all of whom were living in the United States on

7

student visas from China. Plaintiff is informed and believes that Defendant has contracts with various third-party airline companies operating in the United States that require Defendant to hire English teachers to teach its Chinese students English. CFIs were only responsible for teaching the Chinese students how to fly airplanes. Flight training typically takes about four months to complete.

25.     Plaintiff is informed and believes that Defendant later updated its contracts with third party airlines to add additional job responsibilities for CFIs. In addition to providing regular flight and ground training, CFIs were also required to teach English to their Chinese students.

26.     Plaintiff is informed and believes that FAA regulations, 14 CFR 61.83(c), require that flight students be able to read, speak, write, and understand the English language. Of the 180 students, Plaintiff estimates that more than 30 percent of the students lacked a basic understanding of English at all. Although an experienced flight instructor at IASCO had about nine students at a time, Plaintiff started with five students as a new instructor. Among his five students, Plaintiff is informed and believes that at least two of his students lacked the requisite English proficiency for proper flight instruction. After contacting the FAA in or about early August 2017, Plaintiff confirmed that he and other CFIs were not qualified to teach English to Chinese flight students. Plaintiff has reported this issue to his lead supervisor Shannon Fiest, but to his knowledge nothing was done.

27.     On one occasion, one of Plaintiff's Chinese students was flying an airplane and nearly caused an accident. While airborne, the flight control tower gave the student a flight command to continue to fly straight. Failing to understand the command, the student became confused and turned the plane directly into the route of another nearby airplane. Although no accident occurred, the control tower requested the student land the airplane immediately, and notified Plaintiff with a report of the incident. Plaintiff promptly followed protocol to report the incident of pilot deviation to the Alpha Safety Reporting System.

HENNIG
RUIZ &
SINGH

28.     Plaintiff is informed and believes that on or around late May 2017, new management took over IASCO Flight Training and brought on CEO John Fitzpatrick.

29.     Plaintiff and other CFIs have commonly observed that the fuel indicators in Defendant's airplanes were faulty. The fuel gauges would indicate that there was no fuel, even when there was. FAA regulations, 14 CFR 91.205(b)(9) requires that a fuel gauge indicate the correct quantity of fuel in each tank. Plaintiff reported this issue to his direct supervisor, Shannon Fiest, but to his knowledge nothing has been done.

30.     Plaintiff and other CFIs have also observed that different equipment on Defendant's airplanes was broken, but management consistently deferred maintenance. For example, the altitude indicators on many of the airplanes were broken. Plaintiff believes that this presents a particularly greater risk to new student pilots starting flight instruction. Plaintiff reported this issue to his direct supervisor, Shannon Fiest, but to his knowledge nothing was done.

31.     Over the course of Plaintiff's employment at IASCO, Plaintiff reported to Supervisor Fiest on numerous occasions about the issues that Plaintiff believed violated FAA regulations. This has included the erratic scheduling of shifts leading to instructors engaging in over 8 hours of flight instruction in a 24-hour period, English competency of the Chinese students, and deferred maintenance issues described above, and others. Plaintiff expressed to Supervisor Fiest his belief that CFIs should be treated as non-exempt employees and be entitled to overtime pay. Plaintiff has brought these issues up during monthly staff meetings with his team of CFIs, which are led by Supervisor Fiest. Supervisor Fiest's typical response was that he knew about these problems, has brought them up to the attention of IASCO management, but that they will not listen to him. Because Plaintiff sees Supervisor Fiest daily, Supervisor Fiest has even joked that Plaintiff greets him every morning with a complaint.

32.     On or about August 6, another CFI named James experienced problems while flying one of Defendant's airplanes. Maintenance had posted a sign that said the autopilot on the airplane was disabled, but it was actually not disabled as required by 14

9

HENNIG
RUIZ &
SINGH

CFR 25.1329. CFI James promptly reported the issue to the maintenance crew. Maintenance took a look at the plane and determined that the autopilot system had not been disconnected when they believed it had been. Plaintiff was scheduled for a test flight of the airplane on August 11, 2017.

33.    On or about August 7, 2017 Plaintiff was called in early before his scheduled shift to meet with IASCO Flight Chief Jitesh Bahl and Richard Kipp of Human Resources for over an hour. During the meeting, Plaintiff expressed his concerns that the erratic scheduling of shifts leading to flight instructors being forced to provide flight instruction for more than 8 hours in a 24-hour period, English language proficiency of the Chinese students, and deferred aircraft maintenance issues, which were likely violating FAA regulations. Plaintiff explained that the issues were having a serious effect on the safety of flight operations, and that IASCO was at risk of having a serious accident. Plaintiff also explained his belief that CFIs should be treated as non-exempt employees, and be entitled to overtime pay. Bahl acknowledged Plaintiff's concerns but indicated that many of the things were even out of his control. Kipp similarly expressed displeasure with the situation. Bahl promised to resolve at least Plaintiff's erratic scheduling issues by seeing to it that Plaintiff would not be scheduled for more than 8 hours of flight training in a 24-consecutive-hour period. Plaintiff also indicated that he would contact the FAA to report the violations.

34.    Over the next two days, Plaintiff was scheduled for shifts, from 6:00 am to 2:00 pm. After finishing his shift on the second day, however, Plaintiff was subsequently scheduled for a consecutive 2:00 pm to 8:00 pm shift commencing immediately thereafter.

35.    On or about August 11, 2017, after the IASCO maintenance crew had an opportunity to look at the airplane that had been taken out of service for the auto-pilot malfunction, Plaintiff was asked to test fly the airplane. While flying the airplane with IASCO's Chief of Maintenance Garett, Plaintiff told Chief Garett that he did not believe that the controls felt correct, and mentioned several times that the airplane was not flying properly. Plaintiff is informed and believes that Chief Garett was dismissive of Plaintiff's observations, and reassured Plaintiff that the airplane would not go back into service

10

HENNIG
RUIZ &
SINGH

unless it was airworthy. After landing, Plaintiff reemphasized that he believed that the airplane still felt funny. Chief Garett did not bring the airplane maintenance log paperwork that day, and asked to Plaintiff to come in the next day to review it. Plaintiff was not planning to approve the airplane maintenance log and believed that it would not be brought back into service until he signed it. Plaintiff is informed and believes that bringing the airplane back into service without rectifying the issue would be a violation of 14 CFR 25.1329. Plaintiff, however, would learn that the airplane was brought into service the next day when he saw that another CFI had been scheduled to fly it. Plaintiff shared his belief that the airplane was not flying properly and advised the CFI to be careful. The CFI still flew the airplane that day.

36.     On or about August 16, 2017, Plaintiff informed IASCO senior lead flight instructor Patrick Just about the FAA regulations Plaintiff believed Defendant was violating. Supervisor Just strongly recommended that Plaintiff do whatever he can to bring this issue up to CEO John Fitzpatrick.

37.     On or about August 17, 2017 Plaintiff flew one of Defendant's airplanes with two of his students. During the flight, Plaintiff unexplainably lost control of the airplane and almost crashed. At the time, Plaintiff believed he was going to die in the airplane. Plaintiff promptly reported the incident to Supervisor Fiest. During the conversation, Plaintiff indicated that he did not know whether he could continue to fly for IASCO any longer. Plaintiff expressed a fear for his own personal safety and the loss of his FAA license if he were to continue to violate FAA regulations. Supervisor Fiest advised Plaintiff to consider quitting.

38.     Plaintiff had the next three days, approximately August 18 through 20, 2017, off from work.

39.     On or about August 18, 2017, Kipp called Plaintiff on his day off. Kipp requested that Plaintiff come into his office when Plaintiff returned to work. Plaintiff asked if he was getting fired, but Kipp simply responded that Plaintiff needed to come in to see him. During the conversation, Plaintiff believed that he was being encouraged to tender

11

HENNIG
RUIZ &
SINGH

his resignation, but not until he signed the airplane maintenance log affirming that the airplane he flew to test was approved to be brought back into service. Plaintiff indicated that if IASCO continued to break FAA regulations, Plaintiff would have to leave his job rather than risk losing his FAA license. Plaintiff also indicated that he planned to contact the FAA, and that he wanted to speak to CEO John Fitzpatrick.

40.     On or about August 21, 2017, Plaintiff consulted with the FAA in the morning, explained his situation, and asked input on what he should do. The FAA representative indicated that Plaintiff should report all of the issues he identified in a letter and send it to the FAA. Later that day, Plaintiff emailed a letter to Bahl, Kipp, and Fitzpatrick indicating that he had spoken to an FAA representative in Sacramento, and that he believed that the deferred maintenance, erratic scheduling resulting in instructors being forced to provide flight instruction more than 8 hours in a 24-hour period, and English language proficiency of the Chinese students violated FAA regulations. Plaintiff believed that the violations required that he take a flight safety stand down. Plaintiff asked for an opportunity to speak with Fitzpatrick. About thirty minutes after sending the email, Plaintiff received a call from Kipp, who said that he was fired and needed to go drop off his keys. Plaintiff sent a full report of his findings to the FAA later that day.

41.     Plaintiff's final paycheck indicated that he was terminated from his employment at IASCO on August 22, 2017.

42.     On or about August 22, several employees connected with the autopilot maintenance issue were also terminated. James, the original CFI instructor flying the airplane that experienced autopilot issues resigned. James had made similar complaints to IASCO management about the deferred maintenance and safety concerns. Plaintiff is informed and believes that Trainer Mary Keller asked James not to contact the FAA about any safety violations he believed IASCO was violating. Plaintiff is informed and believes that IASCO management had convinced James to resign so as to not get fired.

43.     On or about the period between August 22 and 24, 2017, three separate incidents occurred that led IASCO management to shut down all flight operations for a 24-

12

hour safety period. First, an instructor and student were taxiing an airplane and rammed it into a light pole. Second, two separate hard landings by instructors had caused structural damages to the airplanes. All flight operations were suspended for 24 hours on or about August 24.

44.     Several days after Plaintiff was terminated, Plaintiff met with CEO Fitzpatrick. During the brief meeting, Fitzpatrick also tried to pressure Plaintiff to sign the airplane maintenance log for the airplane with the malfunctioning autopilot, but Plaintiff again refused.

45.     Plaintiff is informed and believes that on or about November 2, 2017 an IASCO airplane with a CFI and two students aboard crashed into a chain link fence after experiencing an engine failure. Although no one was injured, the airplane just missed hitting a nearby California Department of Forestry and Fire Protection aircraft on the ground.

46.     On or about November 17, 2017, Plaintiff filed an Administrative Complaint for retaliation and unlawful termination in violation of 49 U.S.C. § 42121. A true and correct copy of the complaint is attached hereto and incorporated herein as Exhibit A.

47.     On or about December 12, 2017, Plaintiff's complaint was referred to the U.S. Department of Labor Solicitor's Office and accepted for federal investigation. A true and correct copy of the correspondence is attached hereto and incorporated herein as Exhibit B.

48.     In or around June 2019, the Department of Labor completed its collection of position statements, supporting evidence, and witness interviews from both parties.

49.     On or about September 5, 2019, Plaintiff learned that the U.S. Department of Labor's Regional Solicitor's Office had adopted the federal investigator's recommendation of a merit finding against Defendant. The investigator even requested that Plaintiff begin putting together documentation for a claim of damages, including for back pay, front pay, compensatory damages, punitive damages, and attorney fees. A true

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

and correct copy of the correspondence is attached hereto and incorporated herein as Exhibit C.

50.     On or about November 22, 2019, the U.S. Department of Labor suddenly informed the parties that it no longer had federal subject matter jurisdiction to litigate Plaintiff's complaint of retaliation and unlawful termination in violation of AIR-21 because of the recent decision by the Administrative Review Board (ARB), issued September 12, 2019 (*Aziz Aityahia v. Aviation Academy of America*). A true and correct copy of the disposition letter from the Department of Labor is attached hereto and incorporated herein as Exhibit D. A true and correct copy of the *Aziz* case is attached hereto and incorporated herein as Exhibit E.

## **FIRST CAUSE OF ACTION**
### **FAILURE TO PROVIDE MEAL AND REST BREAKS**
### **LABOR CODE SECTIONS 226.7 AND 512**
### **(Against Defendant IASCO)**

51.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

52.     During all relevant times, Plaintiff was an employee of Defendant IASCO.

53.     Cal. Lab. Code § 512 provides that each employee is entitled to appropriate meal and rest breaks for any and all work days of more than four hours in duration.

54.     Defendant violated or caused to be violated Cal. Lab. Code § 512 by requiring Plaintiff to work and not relieving Plaintiff of work for at least thirty minutes in each work day lasting more than five hours.  Defendant also violated these provisions by failing to provide a rest break of not less than ten (10) minutes for each four hours of work or major fraction thereof. Defendant did not even inform Plaintiff that he was entitled to

14

HENNIG RUIZ & SINGH

uninterrupted meal or rest breaks and improperly classified Plaintiff as an exempt employee.

55.     Accordingly, Defendant is liable to Plaintiff for premium pay as defined by Cal. Lab. Code § 226.7 of one hour of wages for each meal or rest break violation for each work day. Plaintiff is also entitled to waiting time penalties pursuant to Cal. Lab. Code § 203.

56.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

57.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

WHEREFORE, Plaintiff requests relief as hereafter provided.


## SECOND CAUSE OF ACTION

### FAILURE TO PAY EARNED WAGES, INCLUDING OVERTIME

### LABOR CODE SECTIONS 510 AND 1194

### (Against Defendant IASCO)

58.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

59.     During all relevant times, Plaintiff was an employee of Defendant IASCO.

60.     Defendants failed to pay Plaintiff as an hourly worker a minimum wage for all hours worked. Cal. Lab. Code § 1194 entitles Plaintiff to recover unpaid minimum wages. Cal. Lab. Code § 1194.2 also entitles Plaintiff to recover liquidated damages in an equal amount. Defendants failed to pay for all hours suffered and permitted to work.

15

HENNIG
RUIZ &
SINGH

61.     Defendants also failed to pay overtime wages to Plaintiff. Cal. Lab. Code §§ 510 and 1198, et seq., provide that (a) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight hours, up to twelve hours, in a workday, or in excess of forty hours in a work week, and (b) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve hours in a workday, and in excess of eight hours on the seventh consecutive day of work in a workweek. Cal. Lab. Code § 1198 provides a private right of action for failure to pay legal compensation for all overtime hours worked.

62.     This cause of action is brought pursuant to Cal. Lab. Code § 200 et seq., which provides that employees are entitled to wages and compensation for work performed, and provides a private right of action for failure to pay wages and compensation for said work performed. Cal. Lab. Code § 1194 entitles a plaintiff to recover unpaid wages.

63.     Such a pattern, practice and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiff in a civil action, for the unpaid balance of the full amount of compensation owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit according to the mandate of Cal. Lab. Code §1194, et seq.

64.     Accordingly, Defendant is liable to Plaintiff for overtime pay as defined by Cal. Lab. Code §§ 510 and 1198 of (1) one and one-half times his regular rate of pay for all hours worked in excess of eight hours, up to twelve hours, in a workday, or in excess of forty hours in a work week and (2) compensation at the rate of twice his regular rate of pay for all hours worked in excess of twelve hours in a workday, and in excess of eight hours on the seventh consecutive day of work in a workweek. Plaintiff is also entitled to waiting time penalties pursuant to Cal. Lab. Code § 203.

65.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

16

HENNIG
RUIZ &
SINGH

66.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## THIRD CAUSE OF ACTION

**FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENT**

**LABOR CODE SECTION 226(a)**

**(Against Defendant IASCO)**

67.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

68.     During all relevant times, Plaintiff was an employee of Defendant IASCO.

69.     Cal. Lab. Code § 226(a) requires an employer to provide with each wage payment an itemized statement that gives specific and accurate information for each pay period.

70.     For a significant period, spanning the entire length of each Plaintiff's employment with Defendant, overtime pay and meal and rest breaks have not been paid, and therefore are inaccurately reported on wage statements. As a result, the itemized wage statements provided were not accurate and indeed false and misleading.

71.     Plaintiff is therefore entitled to recover monetary damages as stated in Cal. Lab. Code § 226(e) as well as injunctive relief as provided in Cal. Lab. Code § 226(g).

72.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

73.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

WHEREFORE, Plaintiff requests relief as hereafter provided.

**FOURTH CAUSE OF ACTION**

**WAITING TIME PENALTIES**

**LABOR CODE SECTIONS 201 THROUGH 203**

**(Against Defendant IASCO)**

74.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

75.     During all relevant times, Plaintiff was an employee of Defendant IASCO.

76.     Cal. Lab. Code § 201 requires an employer who discharges an employee to pay compensation due and owing to said employee immediately upon discharge.

77.     Cal. Lab. Code § 203 provides that an employer who willfully fails to pay compensation promptly upon discharge or resignation, as required under Cal. Lab. Code §§ 201 and 202, is liable for waiting time penalties in the form of continued compensation of up to thirty (30) work days.

78.     Defendant willfully failed and refused, and continues willfully to fail and refuse, to pay promptly all compensation and wages owed including unpaid wages, including overtime and meal and rest breaks, to Plaintiff whose employment terminated, as required by Cal. Lab. Code § 201. As a result, Defendant is liable to Plaintiff for waiting time penalties, together with interest thereon and attorneys' fees and costs, under Cal. Lab. Code § 203.

18

HENNIG RUIZ & SINGH

79.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

80.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## FIFTH CAUSE OF ACTION

### PENALTIES UNDER LABOR CODE §§ 2698, ET SEQ.

### PRIVATE ATTORNEYS GENERAL ACT

### (Against Defendant IASCO)

81.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

79.     Plaintiff brings this cause of action as a representative cause of action pursuant to Labor Code §§ 2698 for violations of Labor Code 226.7, 512, 510, 1194, 226(a), 201-203, and 1197, 1197.1, 1198 on behalf of all aggrieved employees who are defined as all persons who ware employed or who have been employed by Defendant IASCO to the present who have not signed a release of the subject claims.

80.     On or about November 16, 2017, Plaintiff provided written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and Defendant of the specific provisions of the California Labor Code that Defendants have violated and continue to violate. A true and correct copy of the letter to LWDA and Defendant is attached hereto and incorporated herein as Exhibit A.

HENNIG
RUIZ &
SINGH

81.   Plaintiff was not informed by the LWDA within 65 calendar days of the postmark date that the LWDA intended to investigate the alleged violations.

82.   Accordingly, Plaintiff has exhausted all administrative procedures required of him under Labor Code §§2698, 2699 and 2699.3, and as a result, is justified as a matter of right in bringing forward this cause of action.

83.   As a result of the acts alleged above, Plaintiff seeks penalties under Labor Code §§2698 and 2699 because of Defendants' violation of numerous provisions of the California Labor Code.

84.   Plaintiff seeks penalties for Defendants' conduct as alleged herein as permitted by law. Specifically, Plaintiff seeks penalties under Labor Code §2699, for the following:

    a.   Defendant's failure to comply with the requirements of Labor Code §§510 and 1198 for all overtime wages due;

    b.   Defendant's failure to comply with the requirements of Labor Code §226.7 to separately pay and provide off-duty ten (10) minute rest breaks;

    c.   Defendant's failure to comply with the requirements of Labor Code §§226.7 and 512 to provide thirty (30) minute uninterrupted meal breaks;

    d.   Defendant's failure to comply with the requirements of Labor Code §§1194, 1197, and 1197.1 for unpaid minimum wages;

    e.   Defendant's failure to comply with the requirements of Labor Code §§201, 202, and 203 for timely payment of final wages.

    f.   Defendant's failure to comply with the requirements of Labor Code §226(a) to provide accurate wage statements.

85.   Under Labor Code §2699, Plaintiff and the aggrieved employees are entitled to $100.00 for any initial violation and $200.00 for all subsequent violations of the above-mentioned provisions of the California Labor Code.

HENNIG
RUIZ &
SINGH

86.     Under Labor Code §2699, Plaintiff and the aggrieved employees shall be awarded twenty-five percent (25%) of all penalties received under the Private Attorneys General Act, interest, attorneys' fees and costs.

87.     Under Labor Code §2699, the State of California should be awarded seventy-five percent (75%) of the penalties due received under the Private Attorneys General Act.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## SIXTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF LABOR CODE SECTION 102.5

## (Against Defendant IASCO)

79.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

80.     During all relevant times, Plaintiff was an employee of Defendant IASCO.

81.     During his employment, Plaintiff engaged in protected activity subject to the protection of Cal. Lab. Code § 1102.5(b) by disclosing information to a person with authority over the employee or to another employee who has the authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information disclosed involved a violation of state or federal statutes, or a violation or noncompliance with a local, state, or federal rule or regulation.

82.     Plaintiff had disclosed his reasonable belief that IASCO was violating FAA regulations to his direct supervisor Shannon Fiest and Bahl, Kipp, Keller, and Fitzpatrick. The FAA regulations discussed have included one or more of the following: (1) 14 CFR 61.195 requires that a CFI not conduct more than 8 hours of flight training within a 24-hour consecutive hour period; (2) 14 CFR 61.83(c) requires that flight students be able to read,

21

HENNIG
RUIZ &
SINGH

speak, write, and understand the English language, (3) 14 CFR 91.205(b)(9) requires that a fuel gauge indicate the correct quantity of fuel; and (4) 14 CFR 25.1329 requires that autopilot system be functional.

83.    On or about August 21, 2017, Plaintiff consulted with an FAA representative in the morning and discussed what he believed were Defendants' violations of FAA regulations. Later that day, Plaintiff emailed a letter to Bahl, Kipp, and Fitzpatrick indicating that he had spoken to an FAA representative in Sacramento, and that he believed that the deferred maintenance, erratic scheduling, and English language proficiency of the Chinese students violated FAA regulations. Defendant retaliated against Plaintiff by terminating him over the phone about thirty minutes later in violation of the Labor Code.

84.    As a result of the protected activity described herein, Plaintiff was subjected to retaliation by Defendants. This retaliation was with knowledge of Plaintiff's protected activity since his protected activity was within the company and communicated to Defendants.

85.    Defendants' violation of Cal. Lab. Code § 1102.5 was a substantial factor in causing Plaintiff's injury.

86.    As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court. As a proximate result of the retaliation against Plaintiff by Defendants in violation of Cal. Lab. Code § 1102.5, Plaintiff has suffered general damages and special damages of wage loss.

87.    Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

88.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of his right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to

HENNIG
RUIZ &
SINGH

Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each Defendant, jointly and severally.

## SEVENTH CAUSE OF ACTION

### RETALIATION IN VIOLATION OF LABOR CODE SECTION 98.6

### (Against Defendant IASCO)

89.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

90.     During all relevant times, Cal. Lab. Code § 98.6 was in effect and binding upon Defendants. Cal. Lab. Code § 98.6 prohibits any person from retaliating, discriminating, or taking any other adverse action against an employee for, among other activities, making a written or oral complaint that he is owed unpaid wages, or exercising on behalf of himself or others any rights afforded to him under the Labor Code.

91.     During his employment, Plaintiff has complained to his Supervisor Shannon Fiest, and Keller, Bahl, and Kipp that he and other CFIs should be treated as non-exempt employees and were owed unpaid wages for overtime hours worked. In a conversation with IASCO Scheduler Miranda, Plaintiff was told that because he was a salaried employee, he must be available anytime he is scheduled for a shift, and that he would not get paid extra.

92.     During his employment, Plaintiff also engaged in protected activity subject to the protection of Cal. Lab. Code § 1102.5(b) by disclosing information to a person with authority over the employee or to another employee who has the authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information disclosed involved a violation of state or federal statutes, or a violation or noncompliance with a local, state, or federal rule or regulation.

23

93.     Plaintiff had disclosed his reasonable belief that Defendant IASCO was violating FAA regulations to his direct supervisor Shannon Fiest and Defendants Bahl, Kipp, Keller, and Fitzpatrick. The FAA regulations discussed have included one or more of the following: (1) 14 CFR 61.195 requires that a CFI not conduct more than 8 hours of flight training within a 24-hour consecutive hour period; (2) 14 CFR 61.83(c) requires that flight students be able to read, speak, write, and understand the English language, (3) 14 CFR 91.205(b)(9) requires that a fuel gauge indicate the correct quantity of fuel; and (4) 14 CFR 25.1329 requires that autopilot system be functional.

94.     On or about August 21, Plaintiff consulted with an FAA representative in the morning and discussed what he believed were Defendant's violations of FAA regulations. Later that day, Plaintiff emailed a letter to Defendants Bahl, Kipp, and Fitzpatrick indicating that he had spoken to an FAA representative in Sacramento, and that he believed that the deferred maintenance, erratic scheduling, and English language proficiency of the Chinese students violated FAA regulations. Defendants retaliated against Plaintiff by terminating him over the phone about thirty minutes later in violation of the Labor Code.

95.     As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

96.     Defendants' violation of Cal. Lab. Code § 98.6 was a substantial motivating factor in causing Plaintiff's injury.

97.     Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

98.     Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each Defendant, jointly and severally.

24

HENNIG
RUIZ &
SINGH

WHEREFORE, Plaintiff requests relief as hereafter provided.

**EIGHTH CAUSE OF ACTION**

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**(Against Defendant IASCO)**

99.     As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

100.    Cal. Lab. Code §§ 98.6 and 1102.5 express a public policy against retaliatory conduct for reports of violations of the law, including the Labor Code. 49 U.S.C. § 42121 expresses a public policy against retaliatory conduct for reports of violations or alleged violations of any order, regulation, or standard of the FAA or any other provisions of federal law relating to air carrier safety.

101.    As a proximate result of Defendants' wrongful conduct in violation of the California Labor Code, and subsequent termination of Plaintiff's employment in retaliation for having complained about the company's misclassification of its CFIs, Plaintiff has sustained humiliation, emotional distress, and mental and physical pain and anguish, in a sum according to proof.

102.    Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

103.    Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each Defendant, jointly and severally.

HENNIG
RUIZ &
SINGH

WHEREFORE, Plaintiff requests relief as hereafter provided.

## NINTH CAUSE OF ACTION

### SOLICITATION OF EMPLOYEE BY MISREPRESENTATION

### LABOR CODE SECTION 970

### (Against Defendant IASCO)

104.    As a separate and distinct cause of action, Plaintiff complains and realleges all the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.   Plaintiff brings this Cause of Action against Defendant IASCO.

105.    During all relevant times, Cal. Lab. Code § 970 was in effect and binding upon Defendants. Cal. Lab. Code § 970 prohibits an employer from making a false representation(s) about work to persuade a prospective employee to change his or her residence.

106.    Defendant made a representation to Plaintiff about: (1) the kind, character, or existence of work; (2) the length of time work would last; (3) the compensation for work; or (4) the sanitary or housing conditions relating to work; among other reasons. Defendant's knew its representations to Plaintiff were not true, yet made them intending that Plaintiff would rely on the representations.

107.    On or about December 2016, Defendant Kipp called Plaintiff to recruit him to move down to Redding, California from Oregon to join IASCO as a CFI, knowing that he would have to move to accept the position. Kipp explained that IASCO CFIs would be paid well, scheduled shifts would be shorter and predictable, and that Plaintiff would only have to provide flight instructions. After Plaintiff initially declined the offer, Kipp called Plaintiff again in or around January 2017 and successfully recruited Plaintiff to join IASCO by also offering relocation assistance. After relocating Plaintiff's entire family to Redding,

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

California, and starting his employment with Defendant, however, Plaintiff found Defendant's representations to be untrue.

108.   Plaintiff is informed and believes that as a CFI, he should be treated as a non-exempt employee, and that paying him on a salary basis without payment of overtime or a minimum wage after working 8 hours violated the Labor Code. Plaintiff is also informed and believes that his scheduled flight shifts were neither predictable nor shorter because Plaintiff has been subjected to erratic scheduling that has regularly included finding out of his flight shifts last minute and being required to engage in over 8 hours of flight instruction in a 24-hour period. Plaintiff has also been required by IASCO to teach English aviation classes to its Chinese students when originally promised that Plaintiff would only have to provide flight instruction.

109.   Defendant knew its representations to Plaintiff about its salary compensation violated the California Labor Code. Defendant knew that scheduled flight shifts would be provided last minute, required extended shifts, and were not subject to change. And Defendant knew that CFIs would have to teach English aviation classes to Chinese flight students that lacked English proficiency, and not just provide flight instruction. Yet Defendant misrepresented those claims to Plaintiff to persuade him to relocate his entire family to Redding, California from Oregon and join IASCO as a CFI.

110.   Plaintiff reasonably relied on Defendant's representation and changed his residence for the purpose of working for Defendant. After Plaintiff declined IASCO's initial offer in or around December 2016, Kipp called Plaintiff again in or around January 2017 to reemphasize the benefits of joining IASCO. This time, Kipp persuaded Plaintiff with a $1,500 relocation assistance payment and assured Plaintiff that he would no longer have to worry about making ends meet again. Plaintiff accepted the offer, and moved his entire family of six from Oregon to Redding, California for the purpose of starting his new employment Defendant IASCO.

HENNIG
RUIZ &
SINGH

111.   As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

112.   While employed by Defendant, and at all times relevant to this action, Plaintiff was the sole, income earner for his household. Plaintiff began worked for Defendant on or about February 13, 2017 to about August 22, 2017 when was he was terminated. Several days after he was terminated, Plaintiff and his family moved out of Redding, California because, without his sole source of household income, his family of six could not afford to continue to live in California. Plaintiff drove his family across the country, and moved back home to live with his parents in Pennsylvania.

113.   Defendants' violation of Cal. Lab. Code § 970 was a substantial motivating factor in causing Plaintiff's injury.

114.   Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of the court to amend this complaint when the amounts are more fully known.

115.   Plaintiff is informed and believes and thereon alleges that the aforesaid acts directed toward Plaintiff were carried out with a conscious disregard of her right to be free from such illegal behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294 entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of each Defendant, jointly and severally.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendants, jointly and severally, as to his First through Fourth and Sixth through Ninth Causes of Action, as follows:

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

1.  For restitution of all monies due Plaintiff including back pay, front pay, lost employment benefits and other compensation, and other special damages according to proof;

2.  For general damages to compensate Plaintiff for his past, present, and future emotional distress, pain and suffering, and loss of pleasure and enjoyment of life;

3.  For all applicable injunctive relief as allowed by law;

4.  For all punitive damages as allowed by law;

5.  For applicable civil penalties as allowed by law;

6.  For an award of interest, including prejudgment interest, at the legal rate;

7.  For costs of suit incurred;

8.  For an award of attorney fees as allowed by law; and

9.  For such other and further relief as this Court deems appropriate.

WHEREFORE Plaintiff demands judgment against Defendants, jointly and severally, as to his <u>Fifth Cause of Action</u>, as follows:

1.  That the Court determine that Plaintiff may bring this case of action on behalf of all aggrieved employees pursuant to Labor Code sections 2699 and 2699.3;

2.  For an award of twenty-five percent (25%) of all penalties due under California law and interest to the aggrieved employees pursuant to Labor Code section 2699;

3.  For an award of attorneys' fees and costs pursuant to Labor Code section 2699;

4.  For an award of seventy-five (75%) of the penalties due under California law to the State of California pursuant to Labor Code section 2699;

5.  For such other and further relief as the Court may deem equitable and appropriate.

29

HENNIG RUIZ & SINGH

1

2    DATED: December 15, 2019              HENNIG RUIZ & SINGH

3

4                                         /s/ Dat Tommy Phan_____
                                          Rob Hennig (State Bar No. 174646)
5                                         rob@employmentattorneyla.com
                                          Brandon Ruiz (State Bar No. 264603)
6                                         brandon@employmentattorneyla.com
                                          Dat Tommy Phan (State Bar No. 316813)
7                                         dat@employmentattorneyla.com

8                                         HENNIG RUIZ & SINGH
                                          3600 Wilshire Blvd, Suite 1908
9                                         Los Angeles, CA 90010
                                          (213) 310-8301 (office)
10                                        (213) 310-8302 (fax)

11                                        *Attorneys for Plaintiff Matthew Stonecypher*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury in this matter.

DATED: December 15, 2019          HENNIG RUIZ & SINGH


/s/ Dat Tommy Phan_____

Rob Hennig (State Bar No. 174646)
rob@employmentattorneyla.com
Brandon Ruiz (State Bar No. 264603)
brandon@employmentattorneyla.com

HENNIG RUIZ & SINGH
3600 Wilshire Blvd, Suite 1908
Los Angeles, CA 90010
(213) 310-8301 (office)
(213) 310-8302 (fax)

*Attorneys for Plaintiff Matthew Stonecypher*

SECOND AMENDED COMPLAINT

HENNIG
RUIZ &
SINGH

# Exhibit A

# HENNIG RUIZ
## ——— LAW FIRM ———

November 14, 2017

**SENT BY EMAIL AND FAX**

John Wendland
District Manager
California Occupational Safety and Health Administration
Redding (Field) State Plan Office
381 Hemsted Dr. Redding, CA 96002

**RE: Matthew Stonecypher Retaliation for Reporting Violation of FAA Regulations**

Dear Mr. Wendland:

This office represents Matthew Stonecypher ("Plaintiff" or "Stonecypher") with respect to his claims under 49 U.S.C. § 42121. Plaintiff was employed by IASCO Flight Training Inc. ("Defendant" or "IASCO") and regularly worked at IASCO located in Redding, California.

29 CFR 1979.103 requires that a complaint be filed with the OSHA Area Director responsible for enforcement activities in the geographical area where the employee resides or was employed. During all relevant times, Plaintiff was an employee of Defendant in Redding, California. This letter is sent in compliance with 29 CFR 1979.103.

Plaintiff has also filed a Complaint with the Eastern District of California for retaliation in violation of 49 U.S.C. § 42121, among other causes of action. Plaintiff is prepared to withdraw his Complaint if the Court finds that Plaintiff must first exhaust his administrative remedies before proceeding in federal court. Alternatively, to the extent that exhaustion is not required and to the extent that an individual cause of action exists as to this claim, Plaintiff will withdraw his claim with the Department of Labor.

## A. Contact Information

**Brandon Ruiz**, Partner
Hennig Ruiz p.c. 1925 Century Park East, Suite 1960
Los Angeles, CA 90067
Phone: (310) 843-0020
Fax: (310) 843-9150
Email: brandon@employmentattorneyla.com

**Matthew Stonecypher**, Client
Phone: (814) 691-3051
Email: mstonecypher327@msn.com

**Richard Kipp**, Human Resources
IASCO Flight Training Inc.
6460 Lockheed Drive
Redding, CA 96002
Phone: (530) 722-9419

## B.  Statement of Facts

On or around February 13, 2017, Plaintiff Matt Stonecypher began working as a Certified Flight
Instructor ("CFI") at IASCO Flight Training Inc. in its office in Redding, California.

### 1.  14 CFR 61.195 – Cannot Conduct More Than 8 Hours of Flight Training Within a 24 Consecutive Hour Period

Since the beginning of Plaintiff's employment at IASCO, Defendant IASCO would erratically
schedule its flight instructors for shifts. Plaintiff is informed and believes, and thereon alleges
that according to FAA regulations, 14 CFR 61.195, a CFI may not conduct more than 8 hours of
flight training within a 24 consecutive hour period. A CFI that violates this regulation may be
subjected to a license revocation and/or additional sanctions by the FAA.

Defendant would regularly schedule Plaintiff and its other CFIs to extended or even consecutive
shifts that exceeded 8 hours of training within a given 24-hour period.  For example, Plaintiff has
been scheduled for 11 hours of flight training This may not even include the time Plaintiff spent
waiting at the airport terminal for an airplane to become available for instructional use. Plaintiff
was also scheduled for consecutive and/or close shifts which would require that Plaintiff violate
FAA regulations limiting the number of instructional flight hours in a 24-hour period.

### 2.  14 CFR 61.83(c) –Flight Students Must Be Able to Read, Speak, Write, and Understand the English Language

As a CFI, Plaintiff was hired to provide flight and ground training to Defendant's flight students.
Plaintiff is informed and believes that FAA regulations, 14 CFR 61.83(c), require that flight
students be able to read, speak, write, and understand the English language.

Plaintiff is informed and believes that Defendant enrolled approximately 180 students, virtually
all of whom were living in the United States on student visas from China. Plaintiff is informed
and believes that Defendant has contracts with various third party airline companies operating in
the United States that require Defendant to hire English teachers to teach its Chinese students
English. CFIs were only responsible for teaching the Chinese students how to fly airplanes.
Plaintiff is informed and believes that Defendant later updated its contracts with third party
airlines to add additional job responsibilities for CFIs. In addition to providing regular flight and
ground training, CFIs were also required to teach English to their Chinese students.

Of the 180 students, Plaintiff estimates that more than 30 percent of the students lacked a basic
understanding of English at all. Among his five students, Plaintiff is informed and believes that
at least two of his students lacked the requisite English proficiency for proper flight instruction.
After contacting the FAA in or about early August 2017, Plaintiff confirmed that he and other

CFIs were not qualified to teach English to Chinese flight students. Plaintiff has reported this issue to his lead supervisor Shannon Fiest, but to his knowledge nothing was done.

### 3. Deferred Maintenance and Reporting

Plaintiff and other CFIs have commonly observed that the fuel indicators in Defendant's airplanes were faulty. The fuel gauges would indicate that there was no fuel, even when there was. FAA regulations, 14 CFR 91.205(b)(9) requires that a fuel gauge indicate the correct quantity of fuel in each tank. Plaintiff reported this issue to his direct supervisor, Shannon Fiest, but to his knowledge nothing has been done.

Plaintiff and other CFIs have also observed that different equipment on Defendant's airplanes was broken, but management consistently deferred maintenance. For example, the attitude indicators on many of the airplanes were broken. Plaintiff believes that this presents a particularly greater risk to new student pilots starting flight instruction. Plaintiff reported this issue to his direct supervisor, Shannon Fiest, but to his knowledge nothing was done.

Over the course of Plaintiff's employment at IASCO, Plaintiff reported to Supervisor Fiest on numerous occasions about the issues that Plaintiff believed violated FAA regulations. This has included the erratic scheduling of shifts leading to instructors engaging in over 8 hours of flight instruction in a 24-hour period, English competency of the Chinese students, and deferred maintenance issues described above, and others. Plaintiff has brought these issues up during monthly staff meetings with his team of CFIs, which are led by Supervisor Fiest. Supervisor Fiest's typical response was that he knew about these problems, has brought them up to the attention of IASCO management, but that they will not listen to him. Because Plaintiff sees Supervisor Fiest daily, Supervisor Fiest has even joked that Plaintiff greets him every morning with a complaint.

### 4. Reporting and Retaliation

On or about August 7, 2017 Plaintiff was called in early before his scheduled shift to meet with IASCO Flight Chief Jitesh Bahl and Richard Kipp of Human Resources for over an hour. During the meeting, Plaintiff expressed his concerns that the erratic scheduling of shifts leading to flight instructors being forced to provide flight instruction for more than 8 hours in a 24-hour period, English language proficiency of the Chinese students, and deferred aircraft maintenance issues, which were likely violating FAA regulations. Plaintiff explained that the issues were having a serious effect on the safety of flight operations, and that IASCO was at risk of having a serious accident.

Bahl acknowledged Plaintiff's concerns but indicated that many of the things were even out of his control. Kipp similarly expressed displeasure with the situation. Bahl promised to resolve at least Plaintiff's erratic scheduling issues by seeing to it that Plaintiff would not be scheduled for more than 8 hours of flight training in a 24-consecutive-hour period. Plaintiff also indicated that he would contact the FAA to report the violations. Several days later, Plaintiff was scheduled for consecutive shifts of more than 8 hours of flight training in a 24-hour period.

On or about August 16, 2017, Plaintiff informed IASCO senior lead flight instructor Patrick Just about the FAA regulations Plaintiff believed Defendant was violating. Supervisor Just strongly recommended that Plaintiff do whatever he can to bring this issue up to CEO John Fitzpatrick.

On or about August 17, 2017 Plaintiff flew one of Defendant's airplanes with two of his students. During the flight, Plaintiff unexplainably lost control of the airplane and almost crashed. At the time, Plaintiff believed he was going to die in the airplane. Plaintiff promptly reported the incident to Supervisor Fiest. During the conversation, Plaintiff indicated that he did not know whether he could continue to fly for IASCO any longer. Plaintiff expressed a fear for his own personal safety and the loss of his FAA license if he were to continue to violate FAA regulations. Supervisor Fiest advised Plaintiff to consider quitting.

On or about August 18, 2017, Kipp called Plaintiff on his day off. Kipp requested that Plaintiff come into his office when Plaintiff returned to work. Plaintiff asked if he was getting fired, but Kipp simply responded that Plaintiff needed to come in to see him. During the conversation, Plaintiff believed that he was being encouraged to tender his resignation, but not until he signed the airplane maintenance log affirming that the airplane he flew to test was approved to be brought back into service. Plaintiff indicated that if IASCO continued to break FAA regulations, Plaintiff would have to leave his job rather than risk losing his FAA license. Plaintiff also indicated that he planned to contact the FAA, and that he wanted to speak to CEO John Fitzpatrick.

On or about August 21, 2017, Plaintiff consulted with the FAA in the morning, explained his situation, and asked input on what he should do. The FAA representative indicated that Plaintiff should report all of the issues he identified in a letter and send it to the FAA. Later that day, Plaintiff emailed a letter to Bahl, Kipp, and Fitzpatrick indicating that he had spoken to an FAA representative in Sacramento, and that he believed that the deferred maintenance, erratic scheduling resulting in instructors being forced to provide flight instruction more than 8 hours in a 24-hour period, and English language proficiency of the Chinese students violated FAA regulations. Plaintiff believed that the violations required that he take a flight safety stand down. Plaintiff asked for an opportunity to speak with Fitzpatrick. About thirty minutes after sending the email, Plaintiff received a call from Kipp, who said that he was fired and needed to go drop off his keys. Plaintiff sent a full report of his findings to the FAA later that day.

## C. **Retaliation in Violation of 49 U.S.C. § 42121**

The Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21), 49 U.S.C. § 42121(a) provides that no air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee: (1) provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the FAA; (2) has filed, caused to be filed, or is about to file (with any knowledge of the employer) or cause to be filed a proceeding relating to any violation or alleged violation of any order, regulation, or standard of the FAA.

49 U.S.C. § 42121(b)(2)(B)(i) requires that complainant make a prima facie showing that his employer's behavior was a contributing factor in the unfavorable personnel action alleged in the complaint. To make out a prima facie case, a plaintiff must show that: (1) he engaged in protected activity or conduct; (2) his employer knew or suspected, actively or constructively, that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the circumstances were sufficient to raise an inference that the protected activity was a contributing factor in the unfavorable action.

Plaintiff is informed and believes and thereon alleges that Defendant IASCO is an air carrier, contractor or subcontractor of an air carrier(s) operating in the United States. Plaintiff was an employee of Defendant IASCO for all relevant times.

During his employment, Plaintiff engaged in protected activity subject to the protection of 49 U.S.C. § 42121 by consulting with the FAA about what he believed were violations of FAA regulations committed by Defendant. On or about August 2017, Plaintiff spoke with an FAA representative and confirmed that CFIs were not qualified to teach English to Chinese flight students because it would violate 14 CFR 61.83(c); this regulation requires that flight students be able to read, speak, write, and understand the English language.

On or about August 18, 2017, Plaintiff told Defendant Kipp over the phone that he planned to contact the FAA about the FAA regulations he believed IASCO was violating. After consulting the FAA on or about August 21, 2017, Plaintiff emailed a letter to Bahl, Kipp, and CEO Fitzpatrick indicating that he had spoken to an FAA representative in Sacramento, and that he believed that the deferred maintenance, erratic scheduling leading to flight instructors providing more than 8 hours of flight instruction in a 24-hour period, and English language proficiency of the Chinese students violated FAA regulations. Defendant retaliated against Plaintiff by terminating him over the phone about thirty minutes later.

As a result of the protected activity described herein, Plaintiff was subjected to retaliation by Defendants and was terminated on or about August 21, 2017. This retaliation was with knowledge of Plaintiff's protected activity since his protected activity was within the company and communicated to Defendants. Defendants' violation of 49 U.S.C. § 42121 was a substantial motivating factor in causing Plaintiff's injury. As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed.

Please inform me if any additional documents or paperwork is necessary, or if you have any questions.

Very truly yours,

Brandon Ruiz


Enclosure:

# Exhibit B

**U.S. Department of Labor**          **Occupational Safety and Health Administration**
**San Francisco Federal Building**
**90 – 7th Street, Suite 18100**
**San Francisco, CA  94103**



**VIA Email**

December 12, 2017

Matthew Stonecypher
c/o Brandon Ruiz
Hennig Ruiz p.c.
1925 Centry Park East, Suite 1960
Los Angeles  CA  90067

Re: IASCO Flight Training Inc./Stonecypher/9-3290-18-114

Dear Mr. Stonecypher:

This letter acknowledges receipt of your whistleblower complaint filed under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR-21), 49 U.S.C. §42121, which you filed on November 14, 2017, against IASCO Flight Training Inc. (Respondent).

The Occupational Safety and Health Administration (OSHA) is responsible for enforcing the whistleblower provisions of AIR-21, and will conduct its investigation following the procedures outlined in 29 CFR Part 1979 (AIR21). You may obtain a copy of the pertinent statute and regulations at:  http://www.whistleblowers.gov. Upon request, a printed copy of these materials will be mailed to you.

Complaints concerning Surface Transportation Assistance Act (STAA) protected activities are to be submitted by the complainant to Federal Motor Carrier Safety Administration (FMCSA) directly via the NCCDB Web site located at https://nccdb.fmcsa.dot.gov/.

In order for the parties to fully respond to, or resolve the complaint, please send a copy of any documents you provide to us, to the Respondent at the address below.  We have notified Respondent of the filing of this complaint and have provided them with a copy.

**IASCO Flight Training Inc.**
**6460 Lockheed Dr.**
**Redding  CA  96002**

**Per Presidential Memorandum – Managing Government Records, any future documents you submit to OSHA shall be submitted electronically, if possible, using the assigned investigator's email address unless otherwise notified by OSHA.**

Parties are encouraged to attempt early resolution of the complaint on their own or, upon request, with OSHA's facilitation. Voluntary adjustment of complaints can be effected by way of a settlement agreement at any time during the investigation.

OSHA Region IX is offering an Expedited Case Processing Pilot (the Pilot) to allow you to request that OSHA terminate its investigation and issue a determination on your complaint if your case has been pending with OSHA for more than 60 days. Requesting termination of the investigation may result in a dismissal of your case. In any event, you (or your attorney) or the respondent(s) may object to OSHA's findings and request a hearing on your case by a U.S. Department of Labor Administrative Law Judge (ALJ). An ALJ will issue a decision on your complaint without any reference to OSHA's factual or legal conclusions (i.e. de novo review). An ALJ may also assist the parties in settling your complaint. ALJs can order the same remedies as OSHA, including, where applicable, back pay, compensatory damages, punitive damages, attorneys' fees, and reinstatement. The timeline for OSHA to finish its investigation is different in every case. OSHA's investigation process may take time, however, and you therefore may be able to receive a quicker determination from OSHA and lose no appeal rights by electing to expedite your claim under the Pilot. For more information, and to elect expedited case processing under the Pilot, please review, sign, and return the attached "Expedited Case Processing Pilot Information and Request Form."

You have the right to be represented by counsel or other representative in this matter. If you choose to have a representative appear on your behalf, please have your representative complete the Designation of Representative form enclosed and forward it promptly.

Once an investigator is assigned to your complaint, you will be provided their contact information. Until the assigned investigator contacts you, please save any evidence regarding your complaint, such as notes, minutes, letters, or check stubs, etc. It may be helpful for you to write down an account of what happened and to prepare a list of the names, addresses, and telephone numbers of the witnesses together with a summary of what each witness should know.

You are expected to cooperate in the investigation of your complaint and failure to do so may cause your complaint to be dismissed. Voluntary adjustment of complaints can be effected by way of a settlement agreement at any time. In addition, informal Alternative Dispute Resolution (ADR) sessions can be requested. **(See Attachments)**

If you choose to submit documents to OSHA that you allege are confidential and should not be disclosed to others without your consent, please identify with sufficient specificity each confidential or proprietary privilege for which protection from disclosure under the Freedom of Information Act (FOIA) is requested. Blanket claims of protection will not be accepted. Rather, please identify the specific information and/or document(s) for which protection is requested. Absent receipt of specific information identifying and clarifying the asserted privileges, OSHA reserves the right not to accept your request.

**Until otherwise instructed, all communications and submissions should be made to:          Whistleblower Protection Program Investigator**
**at email address:          OSHA-REG09-WB@dol.gov**

Sincerely,

Jared Klein
Regional Investigator

For MARK MARCHIONE
Regional Supervisory Investigator
Whistleblower Protection Program


Enclosures:    (1) ADR Fact Sheet & ADR Form
               (2) Designation of Representative
               (3) Expedited Case Processing Pilot Information and Request Form

## Alternative Dispute Resolution (ADR)
## Frequently Asked Questions

### What is OSHA Region IX's ADR program?

OSHA offers a voluntary Alternative Dispute Resolution (ADR) program in which the parties may attempt to resolve the dispute without an investigation.  If the parties elect to pursue ADR, an OSHA official may help the parties achieve early resolution of the complaint before the onset of a full-scale investigation.  Early resolution is a process in which the parties attempt to negotiate a settlement with the assistance of a neutral OSHA whistleblower expert, who is not the investigator assigned to the case and is not involved in OSHA's decision-making on the merits of the case. Communications during the early resolution process are kept confidential, to the extent permitted by law, and are not disclosed to the Whistleblower Investigator or any other Department of Labor employee who is involved in the agency's decision-making on the merits of the case. If OSHA approves the parties' request for early resolution, the investigation will be stayed pending the outcome of the early resolution process. If the parties decline to pursue ADR or if they pursue ADR, but fail to reach a settlement agreement, the investigator identified in the opening letter will proceed with an investigation.  _However, even if attempts at ADR fall through, the parties, with the assistance of the investigator, may enter into a settlement agreement at any time during the course of the investigation._

### What are the benefits of ADR?

ADR allows the parties to resolve the complaint in a mutually satisfactory manner and is faster than an investigation. The process may also allow the parties to preserve or repair the employment relationship. If you do not reach a settlement agreement through an ADR session, OSHA will investigate the complaint like any other.

### How do I sign up for OSHA's ADR Program?

If you would like to pursue ADR, please return the attached "Request for ADR" form within ten (10) business days of your receipt of this letter.  If both parties request ADR, an OSHA official will be contacting you to facilitate an ADR session.

### What happens if I want to pursue ADR but the other party does not agree?

OSHA Region X's ADR program is voluntary. Both Complainant and Respondent must agree to participate.  If either party does not wish to participate, the OSHA investigator will proceed with an investigation.

### What happens if both parties request ADR?

If both parties request ADR, an OSHA official will contact each party separately to coordinate a mutually-agreed upon date, time, location and format for the ADR session. If the parties agree upon a framework, an OSHA official will then facilitate the ADR session. (This facilitator will be someone other than the investigator identified in the opening letter.)

If the parties reach a settlement during the ADR session, the OSHA official will draft or review a proposed settlement agreement following the procedures outlined in the Whistleblower Investigations Manual (the Manual, available at www.whistleblowers.gov, Chapter 6, Remedies and Settlement Agreements.)

*Does attempting ADR delay the OSHA investigation?*

Respondent must provide its position statement within 20 days of receiving OSHA's opening letter unless the parties reach a signed settlement agreement prior to that date.  Attempting early resolution does not confer an extension of time in which Respondent may submit its position statement unless OSHA feels that such an extension would benefit the ADR process.

*How much does this process cost?*

There is no charge to participate.

*How can I learn more about OSHA's ADR program?*

Please contact the investigator of record identified in your opening letter.

**U.S. Department of Labor**

**Occupational Safety and Health Administration
San Francisco Federal Building
90 – 7th Street, Suite 18100
San Francisco, CA  94103**



**REQUEST FOR ADR FORM**

Case No:   IASCO Flight Training Inc./Stonecypher/9-3290-18-114

The Occupational Safety and Health Administration (OSHA) offers a voluntary program under which the Complainant and Respondent may resolve a whistleblower complaint outside of the investigative process, through early resolution. Early resolution is a process in which the parties attempt to negotiate a settlement with the assistance of a neutral OSHA whistleblower expert, who is not the investigator assigned to the case and is not involved in OSHA's decision-making on the merits of the case. Communications during the early resolution process are kept confidential, to the extent permitted by law, and are not disclosed to the Whistleblower Investigator or any other Department of Labor employee who is involved in the agency's decision-making on the merits of the case. If OSHA approves the parties' request for early resolution, the investigation will be stayed pending the outcome of the early resolution process.

If the complaint is not resolved during the early resolution process, either party may share information and documents that it disclosed during the early resolution process with the assigned Whistleblower Investigator.

If you are interested in participating in early resolution, please fax this form or call the Whistleblower Investigator at (415) 625-2547 or Fax: (415) 625-2534.


_____ I am interested in pursuing ADR as an alternative to OSHA's investigation.


_____
Signature                                        Date


_____
Print Full Name                  Daytime Phone Number              Email address

**U.S. Department of Labor**

**Occupational Safety and Health Administration**
**San Francisco Federal Building**
**90 – 7th Street, Suite 18100**
**San Francisco, CA  94103**



| U.S. Department of Labor |
|---|
| **U.S. Department of Labor** |
| **Occupational Safety & Health Administration** |
| **DESIGNATION of REPRESENTATIVE FORM** |
| **PLEASE COMPLETE THE INFORMATION IN THE BOXES BELOW.  USE BLUE OR BLACK INK.** **RETURN THIS FORM TO OSHA AS SOON AS POSSIBLE.** |

**Case No.:   IASCO Flight Training Inc./Stonecypher/9-3290-18-114** Investigator:  Mark Marchione

**Respondent Name:    IASCO**

**Complainant Name:    Stonecypher**

The undersigned hereby enters his/her appearance as representative of Complainant in the above captioned matter:

| Complainant Name (Type or print in the box below) | Representative's Name (Type or print in the box below) |
|---|---|
|  |  |
| **Signature** (Sign below) | **Street Address or P.O. Box** (Type or print in the box below) |
|  |  |
| **Date** (Type or print in the box below) | **City, State, ZIP** (Type or print in the box below) |
|  |  |

| Telephone (Type or print in the box below) | FAX (Type or print in the box below) | E-mail Address (Type or print in the box below) |
|---|---|---|
|  |  |  |
|  |  |  |

# Exhibit C

**dat@employmentattorneyla.com**

| | |
|---|---|
| **From:** | Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov> |
| **Sent:** | Thursday, September 5, 2019 10:11 AM |
| **To:** | 'dat@employmentattorneyla.com' |
| **Cc:** | 'Brandon Ruiz' |
| **Subject:** | RE: IASCO/Stonecypher - Update |
| | |
| **Importance:** | High |

Dat,

I understand you are out until 09/17 and Brandon is in depositions today. However, I wanted to share with you that our Regional Solictor's Office has agreed with my recommendation of a merit finding in this case at this stage of the investigation. One of my next steps is to draft and issue a due process letter that outlines OSHA's reasoning and gives IASCO a limited amount of time to provide any relevant evidence and/or testimony.

I also need to start putting together documentation and rationale for any of the below which may be appropriate:
- Back pay
- Front pay
- Compensatory damages, to include
  - Out-of pocket medical expenses
  - Medical plan payments
  - Job hunting expenses
  - Pain and suffering (documentation is key here)
- Punitive damages
- Attorney's fees

How long do you think this might take on your end? Is this something you could pull together by Friday, 09/27/2019? If not, let me know when you could reasonably provide this information and documentation.

Thanks for your patience!

Brian

*Brian Morgan* (he/him/his pronouns)
Investigator
Whistleblower Protection Program
U.S. Department of Labor – OSHA, Region X
300 Fifth Avenue, Suite 1280 | Seattle, WA 98104-2397
Direct: 206-757-6674 | Main: 206-757-6700 | Fax: 206-757-6705
www.whistleblowers.gov

---

**From:** Morgan, Brian S. - OSHA
**Sent:** Wednesday, August 21, 2019 9:34 AM
**To:** dat@employmentattorneyla.com
**Cc:** Brandon Ruiz <brandon@employmentattorneyla.com>
**Subject:** RE: IASCO/Stonecypher - Update

Dat,

1

Alas, no. I last heard from our Solicitors' office on Monday and they were still reviewing the file.

Brian

*Brian Morgan* (he/him/his pronouns)
Investigator
Whistleblower Protection Program
U.S. Department of Labor – OSHA, Region X
300 Fifth Avenue, Suite 1280 | Seattle, WA 98104-2397
Direct: 206-757-6674 | Main: 206-757-6700 | Fax: 206-757-6705
www.whistleblowers.gov

---

**From:** dat@employmentattorneyla.com <dat@employmentattorneyla.com>
**Sent:** Tuesday, August 20, 2019 10:28 AM
**To:** Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov>
**Cc:** Brandon Ruiz <brandon@employmentattorneyla.com>
**Subject:** RE: IASCO/Stonecypher - Update

Hi Brian,

Do you have any updates for us?

-Dat

---

**From:** Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov>
**Sent:** Monday, July 29, 2019 11:56 AM
**To:** dat@employmentattorneyla.com
**Cc:** Matthew Stonecypher <MStonecypher327@msn.com>
**Subject:** RE: IASCO/Stonecypher - Update

Dat,

Thanks for checking in. I am still in a holding pattern but saw that my supervisor emailed our Regional Solicitors office today about this case.

I will contact you once I know more.

Brian

*Brian Morgan* (he/him/his pronouns)
Investigator
Whistleblower Protection Program
U.S. Department of Labor – OSHA, Region X
300 Fifth Avenue, Suite 1280 | Seattle, WA 98104-2397
Direct: 206-757-6674 | Main: 206-757-6700 | Fax: 206-757-6705
www.whistleblowers.gov

---

**From:** dat@employmentattorneyla.com <dat@employmentattorneyla.com>
**Sent:** Monday, July 29, 2019 11:52 AM
**To:** Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov>

**Cc:** Matthew Stonecypher <MStonecypher327@msn.com>
**Subject:** RE: IASCO/Stonecypher - Update

Hi Brian,

Following up to see if you had an update. I've added Mr. Stonecypher to the message, so that he's in the loop.

-Dat

---

**From:** Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov>
**Sent:** Tuesday, July 2, 2019 6:05 PM
**To:** dat@employmentattorneyla.com
**Subject:** Re: IASCO/Stonecypher - Update

I am waiting to see if the Regional Solicitors Office will take the case as a merit case. I will be in touch.

Get Outlook for iOS

---

**From:** dat@employmentattorneyla.com <dat@employmentattorneyla.com>
**Sent:** Tuesday, July 2, 2019 5:12:28 PM
**To:** Morgan, Brian S. - OSHA
**Subject:** RE: IASCO/Stonecypher - Update

Hi Brian,

Hope you are well. Checking in to see if you had any updates.

Thanks,

-Dat

---

**From:** dat@employmentattorneyla.com <dat@employmentattorneyla.com>
**Sent:** Wednesday, June 5, 2019 11:51 AM
**To:** 'Morgan, Brian S. - OSHA' <Morgan.Brian.S@dol.gov>
**Subject:** RE: IASCO/Stonecypher - Update

Hi Brian,

Thanks for the update. Good luck with your training!

-Dat

---

**From:** Morgan, Brian S. - OSHA <Morgan.Brian.S@dol.gov>
**Sent:** Monday, June 3, 2019 3:19 PM
**To:** dat@employmentattorneyla.com
**Subject:** Re: IASCO/Stonecypher - Update

Dat,

I will begin work on my report after training days and and continue when I am back at my desk in two weeks.

3

Get Outlook for iOS

---

**From:** dat@employmentattorneyla.com <dat@employmentattorneyla.com>
**Sent:** Monday, June 3, 2019 2:01:10 PM
**To:** Morgan, Brian S. - OSHA
**Subject:** IASCO/Stonecypher - Update

Hi Brian,

Hope that you are well. I got your away message that you'll be in training and not returning to your desk until June 17. If you see this message and do have some time to chat regarding updates in the next 2 weeks, feel free to give me a call.

Take care,

-Dat

---

Dat Tommy Phan, Esq.
Hennig Ruiz & Singh
3600 Wilshire Blvd, Suite 1908
Los Angeles, CA 90010
(213) 310-8301 phone
(213) 310-8302 fax
dat@employmentattorneyla.com
www.employmentattorneyla.com



---

*Please note:  This message is being sent by a law firm.  The information contained in this message is personal and confidential information intended only for the use of the individual or entity named herein.  This message may also contain work-product information protected by law.  In accordance with IRS Circular 230 Disclosure, this law firm does not provide tax advice.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify the above listed sender.*

# Exhibit D

**U.S. DEPARTMENT OF LABOR**         Occupational Safety and Health Administration
                                     300 – Fifth Avenue, Suite 1280
                                     Seattle, WA  98104

**Via Electronic Mail**
November 22, 2019

Matthew Stonecypher
c/o Dat Tommy Phan
Henning Ruiz & Singh
3600 Wilshire Boulevard, Suite 1908
Los Angeles, CA 90010
dat@employmentattorneyla.com

Re: IASCO Flight Training / Matthew Stonecypher / 9-3290-18-114

Dear Mr. Stonecypher:

Following an investigation by a duly-authorized investigator, the Secretary of Labor, acting through his agent, the Regional Administrator for the Occupational Safety and Health Administration (OSHA), Region X, issues the following findings:

**Secretary's Findings**

The complaint alleges that on or about August 21, 2017 Respondent caused Complainant to suffer an adverse employment action when Respondent terminated Complainant's employment. On November 15, 2017, Complainant filed a complaint with the Secretary of Labor alleging retaliation in violation of AIR-21. As this complaint was filed within 90 days of the alleged adverse action, it is deemed timely.

The parties are not covered under the AIR21 because Respondent is neither an air carrier, nor a contractor or subcontractor of an air carrier within the meaning of 49 U.S.C. §42121 and 49 U.S.C. §40102(a)(2) and/or Complainant is not an employee within the meaning of 49 U.S.C. §42121. According to a recent decision by the Administrative Review Board (ARB) issued September 12, 2019 (Aziz Aityahia v. Aviation Academy of America), a flight school only qualifies under the Act under certain conditions. These include servicing domestic air carriers or participating in commerce by otherwise hauling passengers, freight or mail. Based on information available, Respondent only services foreign air carriers and does not otherwise engage in commerce as defined in the ARB decision. Consequently, this complaint is dismissed.

Respondent and Complainant have 30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ).  If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with:

> Chief Administrative Law Judge
> Office of Administrative Law Judges
> U.S. Department of Labor
> 800 K Street NW, Suite 400 North
> Washington, D.C. 20001-8002

Phone: (202) 693-7300
Fax: (202) 693-7365

*With copies to*:

| | |
|---|---|
| IASCO Flight Training | Barbara Yee Goto |
| c/o Joseph Breen | Regional Administrator |
| Gordon Rees Scully Mansukhani | U.S. Department of Labor – OSHA |
| 275 Battery Street, Suite 2000 | 300 Fifth Avenue, Suite 1280 |
| San Francisco, CA 94111 | Seattle, WA 98104 |

In addition, please be advised that the U.S. Department of Labor does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an ALJ in which the parties are allowed an opportunity to present their evidence for the record. The ALJ who conducts the hearing will issue a decision based on the evidence and arguments presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decisions under the Act. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of your complaint.

The rules and procedures for handling AIR-21 cases can be found in Title 29 of the Code of Federal Regulations, Part 1979 and may be obtained at www.whistleblowers.gov.

Sincerely,

RYAN
HIMES

Digitally signed by
RYAN HIMES
Date: 2019.11.22
12:08:24 -08'00'

Ryan Himes
Assistant Regional Administrator

cc:  Joseph Breen (IASCO counsel)
     Chief Administrative Law Judge, USDOL
     Federal Aviation Administration, USDOT

# Exhibit E

**U.S. Department of Labor**

Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



In the Matter of:


AZIZ AITYAHIA,                **ARB CASE NO. 2018-0028**

        COMPLAINANT,        **ALJ CASE NO. 2017-AIR-00029**

   v.                          **DATE:**     SEP 1 2 2019

AVIATION ACADEMY OF AMERICA,

        RESPONDENT.

Appearances:

*For the Complainant*:
    R. Chris Pittard, Esq.; *Pittard Law Firm*; San Antonio, Texas

*For the Respondent*:
    Michael V. Galo, Jr., Esq.; *Galo Law Firm, P.C.*; San Antonio, Texas

**Before:** William T. Barto, *Chief Administrative Appeals Judge*; James A. Haynes and Thomas H. Burrell, *Administrative Appeals Judges*

## FINAL DECISION AND ORDER

PER CURIAM. The Complainant, Aziz Aityahia, filed a retaliation complaint under the employee protection provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21)[1] with the Department of Labor's Occupational Safety and Health Administration (OSHA). Complainant

---

[1]     49 U.S.C. § 42121 (2000). AIR 21's implementing regulations are found at 29 C.F.R. Part 1979 (2018).

alleged that his employment with Aviation Academy of America (AAA) was terminated in retaliation against him for making safety-related complaints. OSHA dismissed the complaint because it lacked jurisdiction, but the case was referred to the Office of Administrative Law Judges (OALJ) at Complainant's request. The ALJ granted Respondent's Motion to Dismiss, holding that the complaint is not cognizable under AIR 21 and that the OALJ lacked jurisdiction to consider complaints under Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c) (1970) (OSH Act). Complainant filed a petition requesting that the Administrative Review Board (ARB or the Board) review the ALJ's order. We granted that petition and now affirm.

## JURISDICTION AND STANDARD OF REVIEW

The Secretary of Labor has delegated to the Administrative Review Board (ARB) the authority to issue final agency decisions in review or on appeal of matters arising under AIR 21 and its implementing regulations at 29 C.F.R. Part 1979.[2] The ARB will affirm the ALJ's factual findings if supported by substantial evidence but reviews all conclusions of law de novo. Summary decision is permitted when "there is no genuine dispute as to any material fact and the movant is entitled to decision as a matter of law." 29 C.F.R. § 18.72(a) (2018). On appeal from summary decision, we review the record on the whole in the light most favorable to the non-moving party. *Micallef v. Harrah's Ricon Casino & Resort*, ARB No. 2016-0095, ALJ No. 2015-SOX-00025, slip op. at 3 (ARB July 5, 2018).

## CONCLUSION

The ALJ's determination that there is no evidence that AAA is a covered employer under the employee protection provisions of AIR 21 is correct. For the reasons stated by the ALJ, there is no genuine issue of material fact that Respondent AAA is itself a direct or an indirect air carrier or a contractor or subcontractor of an air carrier. Moreover, the ALJ correctly concluded that Section 11(c)(2) of the OSH Act does not provide an administrative appellate remedy for complaints under that Act that are dismissed by the Secretary of Labor. Thus, we

---

[2]     Secretary's Order No. 01-2019 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board), 84 Fed. Reg. 13,072 (April 3, 2019); 29 C.F.R. § 1979.110(a).

adopt the ALJ's well-reasoned order Ruling on Respondent's Motion to Dismiss as the final agency decision in this matter and attach a copy hereto.[3]

   **SO ORDERED.**

---

[3]     While we agree with the ALJ's reasoning in finding that AAA is not a covered employer under AIR 21, we note that the ALJ mischaracterized the relationship between Vision Technologies Aerospace Incorporated (VT Aerospace), AAA's parent company, and Singapore Technologies Aerospace, Ltd. (ST Aerospace). *See* Ruling on Respondent's Motion to Dismiss at 2. Based upon the evidence in this matter, it appears that ST Aerospace is a direct subsidiary of Singapore Technologies Engineering, Ltd, the primary parent company, not VT Aerospace. This is evidence that the relationship between AAA and any company that actually has a contract with an air carrier is even more attenuated than found by the ALJ.

**U.S. Department of Labor**     Office of Administrative Law Judges
5100 Village Walk, Suite 200
Covington, LA 70433

(985) 809-5173
(985) 893-7351 (Fax)



Issue Date: **07 February 2018**

Case No.:   2017-AIR-00029

In the Matter of

**AZIZ AITYAHIA,**
     **Complainant**

     **v.**

**AVIATION ACADEMY OF AMERICA,**
     **Respondent**

## RULING ON RESPONDENT'S MOTION TO DISMISS

1. **Nature of Motion.** The case arises pursuant to a complaint alleging violations under the employee protective provisions of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21 or "the Act"), 49 U.S.C. § 42121 and the implementing regulations at 29 C.F.R. Part 1979. Pursuant to 29 C.F.R. § 18.70, Respondent filed a "Motion to Dismiss" for lack of jurisdiction under the Act. Respondent specifically asserts that it is not an organization covered by the terms of the Act and thus Complainant was not an employee subject to the protections of the Act.

2. **Procedural History and Findings of Fact.**

     a) On June 10, 2017, Complainant filed a whistleblower allegation against Respondent with the Occupational Safety and Health Administration (OSHA). On July 3, 2017, Complainant was notified by letter that OSHA would not investigate the complaint and dismissed it because OSHA lacked jurisdiction over the matter. Specifically, OSHA determined that Respondent was not an air carrier or contractor or subcontractor within the meaning of AIR 21. OSHA also determined Complainant was not an employee within the meaning of the Act. On August 8, 2017, Complainant filed an objection to the OSHA findings and requested an appeal and hearing before the Office of Administrative Law Judges (OALJ).

     b) On September 13, 2017, the undersigned issued a Notice of Case Assignment and Prehearing Order in this matter.

     c) In compliance with the order, Complainant filed a pleading complaint on October 2, 2017, and Respondent filed a complaint response on October 11, 2017.

d) On November 27, 2017, Respondent filed the Motion to Dismiss[1] addressed by this ruling and order.

e) On December 28, 2017, Complainant filed a response to Respondent's Motion to Dismiss.[2]

f) Respondent is an aviation flight school operating at two airports in Texas. Respondent's primary and sole business enterprise is to provide aircraft pilot training programs. It does not offer passenger or cargo transportation services, and it has not contracted with any air carrier to provide aircraft service or maintenance or perform safety-sensitive functions on aircraft.

g) Respondent is a subsidiary company of Vision Technologies Aerospace Inc. (VT Aerospace). As Respondent's direct parent company, VT Aerospace is, in turn, one of several subsidiary companies operating under Vision Technologies Systems (VT Systems). VT Systems is a primary subsidiary of Singapore Technologies Engineering, Ltd. (ST Engineering). This corporate structure makes Respondent a third-tier subsidiary of ST Engineering.

h) In addition to Respondent, VT Aerospace is also the direct parent company of several other subsidiaries. One of those subsidiaries, Singapore Technologies Aerospace, Ltd., has a contract with Alaska Airlines, a U.S. air carrier, to provide aircraft maintenance and repair services.

i) Although Respondent is a subsidiary of VT Aerospace, it maintains and utilizes independent employment policies and procedures. Respondent also possesses independent insurance policies that are separate and distinct from those of its parent companies. The one notable area of business interaction between Respondent and VT Aerospace involves procuring payroll, information technology, finance, and human resources support from VT San Antonio Aerospace, which is another subsidiary of VT Aerospace.

j) Respondent's senior executive staff includes Mr. Paul Woessner, the General Manager, and Mr. Yusuke Kusajima,[3] Chief Pilot. Both are directly employed by Respondent and are not employees of any other ST Engineering company.

k) In his position as Respondent's General Ganager, Mr. Woessner makes all occupation decisions related to Respondent's employees. His managerial employment authority includes the ability to hire and promote employees, set pay rates, impose disciplinary action, and terminate an employee. Mr. Woessner hired Complainant to be a flight instructor for Respondent in March 2016. Mr. Kusajima and Mr. Woessner directly supervised Complainant during his employment with Respondent. Complainant was not supervised or managed by anyone not employed by

---

[1] Respondent's motion is marked as Appellate Exhibit 1 (AX-1)

[2] Complainant's response to AX-1 is marked as Appellate Exhibit 2 (AX-2).

[3] In AX-1, Respondent's Chief Pilot is identified as Yusuke Fukajima. However, in Exhibit 1, attached as supporting evidence for AX-1, Mr. Woessner names Respondent's Chief Pilot as Yusuke Kusajima. The undersigned interprets the name Fukajima as a careless misidentification made by counsel while composing the motion.

Respondent, Mr. Woessner ultimately decided to suspend and then later terminate Complainant's employment. He made this decision after consulting an executive in another subsidiary company as well as Respondent's president.

### 3. Applicable Law and Analysis.

a) *Motions to Dismiss.* The proceedings in AIR 21 cases are conducted in accordance with the rules of practice and procedure and the rules of evidence for administrative hearings before the Office of Administrative Law Judges, codified at part 18 of title 29 of the Code of Federal Regulations. 29 C.F.R. § 1979.107(a). A party may move to dismiss part or all of the matter for reasons recognized under controlling law, such as lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, or untimeliness. 29 C.F.R. § 18.70(c).

b) *Parties' Positions.* Respondent asserts that, as a flight school, it does not qualify as either an "air carrier" or a "contractor or subcontractor" as those terms are defined for the purposes of applying AIR 21 jurisdiction to Complainant's claim. Respondent notes that it does not, by any means, directly or indirectly provide air transportation. Complainant contends that Respondent is a subsidiary of a larger company, which owns another subsidiary company that serves as a main contractor for a U.S. air carrier. As such, Complainant maintains that "air carrier" status should be imputed upon Respondent for the purpose of determining AIR 21 jurisdiction in this matter.

c) *Subject Matter Jurisdiction for an AIR 21 Claim.* Section 42121 of AIR 21 provides that "[no] air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee" for engaging in protected activity. The Act applies only to air carriers, or contractors or subcontractors of air carriers. 49 U.S.C. § 42121(a). Air carriers are defined as citizens of the United States who directly or indirectly provide air transportation. 49 U.S.C. § 40102(a)(2); 29. C.F.R. § 1979.101. A "citizen of the United States" includes a corporation or association organized under the laws of the United States. 49 U.S.C. § 40102 (a)(15)(c).

In determining whether AIR 21 jurisdiction exists in this matter, the threshold question the undersigned must resolve is whether Respondent may be considered an air carrier. In order to be considered an air carrier, Respondent must be an entity that undertakes "by any means, directly or indirectly, to provide air transportation."

"Air transportation means foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." 49 U.S.C. § 40102(a)(5). Interstate air transportation is defined as:

> The transportation of passengers or property by aircraft as a common carrier for compensation, or the transportation of mail by aircraft (A) between a place in (i) a State, territory, or possession of the United States and a place in the District of Columbia or another state, territory, or possession of the United States; (ii) Hawaii and another place in Hawaii through the airspace over a

- 3 -

place outside Hawaii; (iii) the District of Columbia and another
place in the District of Columbia; or (iv) a territory or possession
of the United States and another place in the same territory or
possession; and (B) when any part of the transportation is by
aircraft.

49 U.S.C. § 40102(a)(25).

The Administrative Review Board (ARB) previously ruled that "the repeated use of
broad language in the AIR 21 statute indicates Congress's intent that the definition of 'air
carrier' be expansively construed." *Cobb v. FedEx Corp. Servs., Inc.*, ARB No. 12-052, ALJ No.
2010-AIR-24 (ARB Dec. 13, 2013); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S.
374, 383-84 (1992) (expansive scope of a statute is apparent from broadly worded statutory
language). The Board in *Cobb* further noted that "by prohibiting 'contractors and
subcontractors,' as well as air carriers, from retaliating against employees for engaging in
protected activity, Congress conveyed a clear aim to promote comprehensive aviation safety."
*Cobb*, ARB No. 12-052, slip op. at 10-12. Additionally, the ARB has applied precedent under
which whistleblower statutes "are intended as remedial measures to be broadly construed."
*Williams v. American Airlines, Inc.*, ARB No. 09-018, ALJ No. 2007-AIR-004, slip op. at 15 n.
73 (ARB Dec. 29, 2010).

In light of these authorities, the undersigned concludes that an examination of
Respondent's business activities for the purpose of determining whether it qualifies as an air
carrier subject to AIR 21 jurisdiction should be expansive and apply the standard set forth by the
ARB in its *Cobb* holding.

However, even when applying such an expansive interpretation to this matter, the
undersigned concludes the record clearly fails to establish that Respondent is an air carrier. The
evidence presented by both parties on this motion indisputably establishes that Respondent
operates a flight training school with the sole purpose of educating student aircraft pilots.
Nothing in the evidence proves that Respondent undertakes by any means, directly or indirectly,
to provide air transportation. Respondent does not in any manner operate as a common carrier
that supplies transportation of persons, cargo, or mail for compensation. As such, Respondent
cannot be categorized as a "direct" air carrier.

Additionally, Respondent does not engage in the business of maintaining the security of
air carriers nor is it in the business of providing integral services necessary for Respondent or
another company to provide air transportation. *DHL Corp v. C.A.B.*, 584 F.2d 914, 915 (9th Cir.
1978). In sum, Respondent fails to qualify as either a direct or indirect "air carrier" by any
criteria established in the *Cobb* decision.

In determining that Respondent is not an "indirect" air carrier, the undersigned found no
persuasive legal authority to support Complainant's argument that AIR 21 jurisdiction should be
imputed to Respondent based on air carrier activities by other subsidiaries of Respondent's
parent company. Complainant argues that - because one of Respondent's sister subsidiaries,
Singapore Technologies Aerospace, Ltd., is a contractor for an air carrier - all subsidiaries under

- 4 -

the control of the main parent company, ST Engineering, should be considered contractors or subcontractors for the purposes of AIR 21 jurisdiction.

Complainant is partially correct in asserting that a respondent in an AIR 21 case can be found to engage in indirect air transportation based on a relationship with a parent company or sister subsidiary company. "The technicalities of corporate structure may not act to shield operating 'segments' of an air carrier from the air safety obligations as an air carrier under AIR 21." *Cobb*, ARB No. 12-052, slip op. at 12; *see, e.g., Fleszar v. U.S. Dept of Labor*, 598 F.3d 912, 915 (7th Cir. 2010) ("In context, 'contractor, subcontractor or agent' sounds like a reference to entities that participate in the [parent']s activities.").

However, as Respondent correctly notes in its motion, there are no prior district court or ARB case decisions that hold an employer is subject to AIR 21 jurisdiction as an indirect air carrier based solely on a subsidiary relationship to either a parent or sister company engaged in business with an air carrier. As Respondent further accurately points out, the lack of such rulings is consistent with how courts apply the general legal principal that "the mere existence of a common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Lusk v. Foxmeyer Health Corp.*, 129 F.3d. 773, 778 (5th Cir. 1997).

The ARB in *Cobb* observed that "although there are no statutory criteria for determining an indirect air carrier . . . [g]enerally speaking, indirect air carriers are defined as those who 'hold out a transportation service to the public under which they utilize the services of a direct carrier for the actual transportation by air.'" *Cobb*, ARB No. 12-052, slip op. at 9 (citations omitted). The Board extended this general precedent to include a subsidiary company that provides critical support to a parent company that operates as an air carrier engaged in air transportation. In so doing, the Board concluded that FedEx Services, a subsidiary of FedEx Express, indirectly provided air carrier services to FedEx Express and was therefore itself an "air carrier" even though the FedEx Services neither owned aircraft nor offered transportation services. *Id.* at 9-13.

In reaching its ruling in *Cobb*, the Board noted that "the operations of FedEx Services are integral to FedEx Express's operation as an air carrier." In support of this conclusion, the Board noted that the information technology services, cargo trucking operations, and disaster and security planning provided by FedEx Services were "essential, albeit indirect, components of the integrated all-cargo air service provided by FedEx Express." *Id.* at 11. Accordingly, the Board concluded that, as a subsidiary, "FedEx Services operations are essential for the air transportation FedEx Express conducts." *Id.*

No similar relationship exists between Respondent and its parent company or sister subsidiaries. The evidence is indisputable that Respondent operates an independent, stand-alone flight training school. As such, it neither supports - nor relies upon - either its parent company or a sister subsidiary for any integral business support related to air transportation. As reflected in the findings of facts, the only direct interaction Respondent has with any other company in its corporate structure is to utilize a sister subsidiary for its information technology support and administrative services. Such services, while admittedly important to the daily operation of the

business, are not "integral," "vital," or "essential" to Respondent's business of training student pilots. Even assuming arguendo that such services are critical, more importantly, they are not provided to Respondent to enable it to engage in air transportation activities.

Based on the forgoing analysis, the undersigned concludes the uncontroverted facts in this case clearly establish that, as a matter of law, Respondent is neither a direct or indirect air carrier engaged in air transportation activities as defined in the Act. As a consequence, the employee whistleblower protections of AIR 21 do not impose subject matter jurisdiction upon Respondent.

d) *OSH Act Claim.* Alternatively, Complainant asserts that this matter is cognizable before the undersigned pursuant to section 11(c) of the OSH Act, 29. U.S.C. § 660(c). This argument also lacks merit.

Section 11(c)(2) of the OSH Act states:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within 30 days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. If any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

The section plainly does not afford a private remedy for actions covered by the OSH Act. *Gomez v. Wilson*, 2013 WL 4099466, *3 (D. Neb., Aug. 13, 2013); *see also Ellis v. Chase Commnc'ns, Inc.*, 63 F.3d 473, 476-77 (6th Cir. 1995) ("OSHA does not create a private right of action."); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976-77 (5th Cir. 1975) ("The only provision in the statute which addresses itself to a private remedy clearly indicates that Congress did not intend OSHA to create a new action for damages in favor of employees."). Complaints filed under Section 11(c) of the OSH Act that have been dismissed by the Secretary of Labor are not accorded an appellate remedy.[4] Thus, this claim is not subject to OALJ jurisdiction.

---

[4] Although Complainant does not have a private right of action under the OSH Act, the Act does not preempt a state law claim against Respondent for wrongful discharge in violation of public policy. *See e.g.*, *Kohrt. V. MidAmerican Energy Co.*, 354 F.3d 894, 901-02 (8th Cir. 2004) (finding there is no federal common law action for wrongful discharge in violation of public policy, but OSHA's remedial scheme does not preempt a state law claim of wrongful discharge in violation of public policy).

**4.  Ruling and Specific Orders.**  Respondent's Motion to Dismiss is granted. The hearing scheduled for April 24, 2018, in San Antonio, TX is cancelled, and this case is dismissed.

**SO ORDERED** this day at Covington, Louisiana.



Digitally signed by Tracy A. Daly
DN: CN=Tracy A. Daly,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Covington, S=LA, C=US
Location: Covington LA

**TRACY A. DALY**
**Administrative Law Judge**

**NOTICE OF APPEAL RIGHTS**: To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of issuance of the administrative law judge's decision. The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-filing; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. See 29 C.F.R. § 1979.110(a). Your Petition must specifically identify the findings, conclusions or orders to which you object. You waive any objections you do not raise specifically. See 29 C.F.R. § 1979.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. You must also serve

the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210. See 29 C.F.R. § 1979.110(a).

If filing paper copies, you must file an original and four copies of the petition for review with the Board, together with one copy of this decision. In addition, within 30 calendar days of filing the petition for review you must file with the Board an original and four copies of a supporting legal brief of points and authorities, not to exceed thirty double-spaced typed pages, and you may file an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which the appeal is taken, upon which you rely in support of your petition for review. If you e-File your petition and opening brief, only one copy need be uploaded.

Any response in opposition to a petition for review must be filed with the Board within 30 calendar days from the date of filing of the petitioning party's supporting legal brief of points and authorities. The response in opposition to the petition for review must include an original and four copies of the responding party's legal brief of points and authorities in opposition to the petition, not to exceed thirty double-spaced typed pages, and may include an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which appeal has been taken, upon which the responding party relies. If you e-File your responsive brief, only one copy need be uploaded.

Upon receipt of a legal brief filed in opposition to a petition for review, the petitioning party may file a reply brief (original and four copies), not to exceed ten double-spaced typed pages, within such time period as may be ordered by the Board. If you e-File your reply brief, only one copy need be uploaded.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1979.110. Even if a Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days of the date the Petition is filed notifying the parties that it has accepted the case for review. See 29 C.F.R. §§ 1979.109(c) and 1979.110(a) and (b).