Rob Hennig (SBN 174646)
rob@employmentattorneyla.com
Brandon Ruiz (SBN 264603)
brandon@employmentattorneyla.com
Dat Tommy Phan (SBN 316813)
dat@employmentattorneyla.com
HENNIG RUIZ & SINGH, P.C.
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Fax: (213) 310-8302

Attorneys for Plaintiff MATTHEW STONECYPHER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW STONECYPHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>IASCO FLIGHT TRAINING INC., a California corporation,<br><br>Defendant. | **CASE NO. 2:17-CV-02409-MCE-JDP**<br><br>**DECLARATION OF ROB HENNIG IN SUPPORT OF PLAINTIFF'S REQUEST FOR SANCTIONS IN THE AMOUNT OF $37,058**<br><br>Judge: Hon. Morrison C. England, Jr.<br>Courtroom:  7<br>Mag. Judge:  Hon. Jeremy D. Peterson<br>Courtroom:  9 |

1

**DECLARATION OF ROB HENNIG**

I, ROB HENNIG, declare as follows:

1.      I am the managing partner of Hennig Ruiz & Singh P.C.  I am a licensed, active member of the State Bar of California.  I am also a member of the Bar of the United Stated District Courts for the Central District of California, the Eastern District of California, the Northern District of California, the Second Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States.

2.      I am one of the attorneys of record for Plaintiff Matthew Stonecypher ("Plaintiff" or "Stonecypher") in his lawsuit against Defendant IASCO Flight Training, Inc. ("Defendant" or "IASCO"), Case No. 2:17-CV-02409-MCE-JDP.

3.      I have personal knowledge of the facts that I am hereafter attesting to. This personal knowledge has been attained either by my own observations or the underlying records and documents of this litigation. If called to testify, I could and would competently testify to the above facts.

**EDUCATION, PROFESSIONAL BACKGROUND, AND RECOGNITION**

4.      I graduated from the University of Notre Dame, Notre Dame, Indiana, in 1989 with honors with a bachelor of arts degree in Economics.  I also had a concentration in Politics, Philosophy, and Economics.  In my senior year at Notre Dame, I was the recipient of the Breen Medal in recognition for my role in the speech and debate program at the University.  The Breen Medal is awarded annually to one senior as the premier orator of the University.  In my sophomore and junior years, I was also awarded the "speaker of the year" – the highest award in the program – for the speech and debate program.  At Notre Dame, I also received numerous awards both internal to the university and at tournaments across the country for my participation in the speech and debate team at Notre Dame.  In my senior year, I wrote a senior thesis on the concept of institutional rigidity in the United State steel industry.  This work explored the break-down of institutions in achieving optimal efficiency (market failure) due to continuing past practices instead of adopting new more innovative practices.

5.      I received my law degree from the University of California at Berkeley (Boalt

Hall) in 1994.  I took the Bar Exam during July, 1994 and passed the Bar and was admitted to the practice of law in December, 1994.

6.     I have a Masters degree (1995) and a Ph.D. (1997) from the Program in Jurisprudence and Social Policy from the University of California at Berkeley – a graduate program at Boalt Hall drawing on law school faculty.  I had graduate concentrations in the economic analysis of law and American political institutions.  I was awarded a John M. Olin Foundation Law and Economics Fellowship for multiple years of graduate study.  I also served as a teaching assistant for undergraduate courses in Law and Economics.  I was a teaching assistant in Law and Economics courses taught, among others, by Gillian Hadfield, now the Richard L. and Antoinette Kirtland Professor of Law and Professor of Economics at the University of Southern California and Robert Cooter, now the Herman F. Selvin Professor of Law and Co-Director, Law and Economics Program at the University of California at Berkeley.  My dissertation was an analysis of partisanship in conference committees and has been cited in the political science literature for creating a new measure of partisanship in the United States Congress.

7.     I was also a teaching assistant for an undergraduate Constitutional Law course at Berkeley taught by Martin Shapiro, the emeritus James W. and Isabel Coffroth Professor of Law at Berkeley.  Professor Shapiro has taught at several prestigious law schools across the county. Professor Shapiro also was the chair of my dissertation committee.  Also on my dissertation committee were Mathew D. McCubbins, now Professor of Law and Political Science at Duke University and formerly the Provost Professor of Business, Law and Political Economy at the University of Southern California; Robert Kagan, the emeritus Emanuel S. Heller Professor of Law at Berkeley, and the late Nelson W. Polsby, Professor of Political Science at Berkeley.

8.     Upon completion of my graduate education, I accepted a full time lecturer position in the Department of Political Science at UCLA.  I served in that position at UCLA for six years, specializing in courses on the judiciary and constitutional law.  Since then, I have continued to teach in the Political Science Department at UCLA in Summer Session and in UCLA Extension.

9.     I was awarded a faculty teaching award for outstanding teaching from the

3

1  undergraduate Political Science Honor Society, Phi Sigma Alpha, for three consecutive years.

2  My teacher course evaluations were consistently among the highest in the Department of Political

3  Science.  I have taught approximately 5,000 UCLA students.  Many of my former students are

4  now attorneys and I have been greeted by former students when I am at the courthouse.

5          10.      I have been interviewed by a number of media outlets for expert information and

6  opinions on a variety of legal topics including commenting for the local NBC affiliate, Channel 4

7  concerning the 2000 Presidential election controversy and the United States Supreme Court's

8  decision of PGA Tour, Inc. v. Martin.  I have also appeared on Channel 4's Evening News

9  Program to discuss the case of Dupree v. Sajahtera, Inc.  I have also been an on camera expert in

10  a series of video presentations on the Supreme Court and judicial system.

11          11.      I have appeared at numerous national and regional academic conferences and

12  presented academic papers on a variety of legal topics.  Some of my papers have included a paper

13  on court deference to administrative determination; the limitations of an equality model for civil

14  rights enforcement and presenting an alternative framework; and commentary upon recent

15  Supreme Court decisions.  I have made presentations at the annual meetings of the Law and

16  Society Association, the American Political Science Association, and the Western Political

17  Science Association.

18          12.      In 2001, I was one of eight finalists for the Supreme Court Fellows Program of the

19  Supreme Court of the United States.

20          13.      I was a founding co-chair of the Board of Directors for what is now named

21  Equality California, the largest statewide LGBT civil rights organization. I was also the original

22  President of what is now called the Equality California Institute, a non-profit tax-deductible

23  research and educational organization.

24          14.      I am currently a member of the Executive Committee and the Board of Directors

25  for the American Civil Liberties Union of Southern California Foundation, a position I have held

26  since 2017.  I previously served two terms on the Board of Directors of the American Civil

27  Liberties Union of Southern California.  I also served as a volunteer for many years with the

28  ACLU of Southern California.  My first contact with the organization was as a Summer Legal

4

1    Intern for the ACLU of Southern California in 1992.

2        15.    I have made presentations for Continuing Legal Education programs on issues

3    related to Employment Law litigation including such topics as legal ethics, disability

4    discrimination, workplace investigations, alternative dispute resolution in the employment

5    context, mental examinations of plaintiffs, and law practice management.  I have made

6    substantive presentations for the California Employment Lawyers Association ("CELA"), the

7    Labor and Employment Law Section of the Los Angeles County Bar Association, the Beverly

8    Hills Bar Association, the Los Angeles Plaintiff Employment Lawyers' Group ("LEFT-JAW"),

9    and the Orange County Plaintiff Employment Lawyers Group ("Orange County CELA").  I have

10   also been an active member of various bar associations associated with my areas of practice.

11       16.    I have been a trainer and/or presenter for the CELA Trial College in 2015, 2016,

12   2017, and 2018.  The CELA Trial College is an intensive three day seminar on trial skills for

13   attorneys practicing in employment law.  I have repeatedly received outstanding evaluations from

14   participants for my feedback and assistance in developing trial skills.

15       17.    I am a past Chair of the Beverly Hills Bar Association's Labor and Employment

16   Law section, where I was a member of the Section Board for many years.

17       18.    I have been a member of the Education Committee of the California Employment

18   Lawyers Association since January, 2018.  The Education Committee plans and executes the

19   annual conference – the largest gathering of plaintiff employment lawyers in California every

20   year.  I have organized numerous education panels on a variety of legal topics.

21       19.    In 2016, 2017, 2018, 2019, 2020, and for 2021, I was recognized by my peers as a

22   "Super Lawyer" for Southern California in the area of employment litigation.  The Super Lawyer

23   distinction is limited to the top five percent of all practicing attorneys in Southern California.

24       20.    During the past five years, my firm has also seen a significant rise in its reputation.

25   Since 2016, I have been selected each year as a SuperLawyer by Findlaw in Employment Law

26   Litigation.  I was also the subject of a high profile question and answer interview in the *Los

27   Angeles Lawyer* in its December, 2018 issue.

28       21.    My firm has also undergone a significant restructuring from being the Law Offices

1  of Rob Hennig (pre-2015) to being Hennig Ruiz (2015 to 2017) and then Hennig Ruiz & Singh

2  (from 2018 forward). The firm has also significantly expanded from being a solo practice as late

3  in 2013 to now having seven attorneys with a law clerk currently awaiting Bar results.  The firm's

4  growth further reflects the professional success of Hennig Ruiz & Singh.

5  **TRIAL AND CLASS ACTION LITIGATION QUALIFICATIONS**

6  22.    I am often asked by other plaintiff attorneys to associate in on cases, particularly in

7  litigation that is approaching trial.  Referrals from my colleagues reflects, I believe, my reputation

8  within the plaintiff's employment bar. Currently, approximately a quarter of our case load,

9  reflects cases that were brought to us by other attorneys. I am generally the lead trial counsel for

10  our referral cases.

11  23.    I have had success in prevailing in litigation that goes to a verdict.  I have been

12  lead trial counsel in the following successful cases:

13  A.    In the case of *Funez v. Millennium Shoes, Inc., et al.*, an award of

14  $3,805.75 on wage and hour claims was rendered in arbitration in October, 2009.  The award was

15  subsequently amended to included $25,000 in attorneys fees (L.A.S.C. Case No. BC387679).

16  B.    In the case of *Modugno v. Northrup Grummon, Inc., et al.*, an arbitration

17  award of $123,656.92 was rendered in favor or my client in September, 2011 (L.A.S.C. Case No.

18  BC402619).

19  C.    In *Kamali v. State of California, Dept. of Transp.*, a jury verdict of

20  $663,983.00 was rendered on November 16, 2012 on FEHA and retaliation claims for a current

21  employee of Caltrans.  Attorneys' fees were later awarded in the amount of $889,280.00.  After

22  the appeal affirmed the jury verdict, the total paid by Defendant inclusive of attorneys fees, costs,

23  and interest exceeded $2,000,000 (L.A.S.C. Case No. BC 426247).

24  D.    In *Brake v. Cal. Dept. of Transp.*, a jury verdict of $571,797.00 was

25  rendered on behalf of my client on or about October 31, 2013 on FEHA claims for a current

26  employee of Caltrans.  An award of attorneys' fees in the amount of $375,000 followed for a total

27  judgment, including costs, of $998,586.  The Defendant paid the judgment without an appeal in

28  that case (L.A.S.C. Case No. BC474796).

6

E.      In *Self v. Equinox Holdings, Inc., et al.*, after a short bench trial, the Court rendered a final judgment on or about February 15, 2017 in favor of Plaintiff that Equinox had an illegal "no hire" mutual agreement with SoulCycle that prevented our client from obtaining a position at SoulCycle (L.A.S.C. Case No. BC561279).

F.      In *Zhang v. Amgen, Inc.*, a jury verdict of $178,199.87 was obtained on a single plaintiff's wage and hour claims on May 3, 2017.  Amgen was presented by Paul Hastings LLP and was intensively litigated (Ventura County Superior Court Case No. 56-2012-00420162-CU-OE-VTA).

G.      In Moinuddin v. State of California, Dept. of Transportation, a jury in August, 2018 found in favor of my client, Sheik Moinuddin, on allegations of discrimination, retaliation, and failure to take all reasonable steps to stop discrimination and retaliation. Furthermore, injunctive relief was Ordered against the State of California and attorney's fees and costs of $715,098.25 (Los Angeles Superior Court Case No. BC656161).

H.      In *Saxton v. Sourceasy, Inc.*, a jury verdict of $1,200,000.00 was obtained on September 14, 2018 based upon Mr. Saxton's claims of fraudulent inducement to move (violation of Cal. Lab. Code § 970) (San Francisco Superior Court Case No. CGC-16-554302).

24.     I have argued before the California Court of Appeal on eight different occasions.  I have also drafted over a dozen appellate briefs.  I have argued before the federal Court of Appeals for the Second Circuit and the Ninth Circuit.  In addition, I have filed two writs of mandate where the trial court has been ordered to respond, one leading to an outright granting of the writ.

25.     I have had numerous large six and seven figure settlements in employment law cases.  I represented Don Hanks in the case of U.S. ex rel. Hanks v. Amgen, Inc., et al that, along with cases from several other Relators, resulted in a settlement of approximately $762,000,000.00 in December 2012 by Amgen with the United States and various states to resolve claims of health care fraud by Amgen (E.D.N.Y. Case No.: CV-08-3096).

26.     For several years, my firm was on retainer as employment law consultants to two different employers. Each of these companies specifically sought me out to function as its consultant on employment law matters.

7

27.     I have been appointed class counsel or co-counsel in *Jones v. Nissan North America, Inc*. (L.A.S.C. case number BC336349); *Amaro, et al. v. Taste America Foods Group, Inc.* (L.A.S.C. case number BC372557); *Winters v. Base Productions, Inc.* (L.A.S.C. case number BC 410650); and *Vinson v. County of San Bernardino* (San Bernardino Superior Court case number CIVDS1209922).

28.     I was also lead counsel or co-counsel in the representative or PAGA actions involving settlements approved by the Court in *Santos v. Design Select* (Contra Costa Superior Court case number C 08-01867); *Espinoza v. Allstate Contract Floors* (Contra Costa Superior Court case number C 08-01917); *Langford v. Hollywood Toys and Costumes, Inc., et al.* (Los Angeles Superior Court Case No. BC364551); *Acuna, et al. v. FS Hotels* (LA), Inc., et al. (Los Angeles Superior Court Case No. BC395269); and *Luis v. Columbia Sussex Management LLC* (Los Angeles Superior court Case No. BC 543454).

## SPECIFIC SKILL AND RECOGNITION AS TO ATTORNEYS' FEES

29.     My expertise in the area of hourly rates is known by other attorneys practicing in employment law.  Since 2018, I have provided eight declarations assessing the professional hourly rates for employment attorneys for cases in the greater Southern California area. I have provided these fee assessment declarations in *Antonio v. Spicers Papers, Inc.* (AAA Arbitration Case No. 01-18-002-9000; *Cao v. Magnolia HiFi, LLC* (AAA Arbitration Case No. 01-17-0002-2568); *McPherson v. EF Intercultural Foundation, Inc.* (L.A.S.C. Case No. BC609090); *The International Brotherhood of Boilermakers, et al. v. Nassco Holdings Inc., et al* (San Diego Superior Court Case No. 37-2014-00041676-CU-OE-CTL); *Aguilar v. Ivy Bridge Group (West Coast), Inc.* (L.A.S.C. Case No. BC608030); and others.

30.     I am a faculty member for the National Association of Legal Fee Analysis (hereinafter "NALFA").  I was a featured speaker for NALFA's program "Attorney Fees in Class Action Litigation" on May 28, 2020.

## PLAINTIFF'S REASONABLE ATTORNEYS TIME EXPENDED

31.     On or about November 15, 2017, Plaintiff filed this action in the United States Eastern District of California. (ECF No. 1), the Hon. Morrison C. England presiding.

32. On May 20, 2020, the Court amended the parties' scheduling order, which provides for a fact discovery cut-off of November 16, 2020. (ECF Nos. 38 and 40). The parties mutually agreed to June 30, 2020 as the date for initial disclosure.

33. On or about June 9, 2020, Plaintiff served Request for Production of Documents (Set Two) ("RFP 2") to Defendant, which included RFP Nos. 79-101, which sought production of documents related to Plaintiff's claims under the Private Attorneys General Act ("PAGA"). On or about July 17, 2020, Defendant served its responses to Plaintiff's RFP 2.

34. Between July and August 2020, Plaintiff engaged in both written and telephonic meet and confers with Defendant. Defendant's position was essentially that the requested PAGA documents were protected by the right to privacy and would only be produced through the *Belair-West* process. However, Defendant refused to undergo a *Belair-West* notice process, contending without substantiation that Plaintiff's PAGA notice was defective. Thus, the parties had reached impasse.

35. On August 12, 2020, Plaintiff filed a notice of motion regarding discovery agreement to bring the matter before Judge Brennan. (ECF No. 43)

36. On September 23, 2020, Judge Brennan heard the parties' arguments regarding the PAGA documents, among other issues. Judge Brennan agreed with Plaintiff that the relevant PAGA period was November 16, 2016 to present, and made a number of discovery orders, including that on or before October 13, 2020,

A. Defendant "shall provide plaintiff a list of names of all current and former flight instructors defendant employed from November 16, 2016 to present"

B. Defendant shall produce documents responsive to plaintiff's Request for Production of Documents, Set Two (RPD Numbers 79-101). To protect the privacy interests of third-parties, all personal identifying information (e.g., names, social security numbers, etc.) shall be redacted. All documents shall be produced with a unique identifying number to be used in place of any names. Each individual's unique identifying number shall be consistent as to all documents used." This was memorialized by the court in a written order issued on September 25, 2020. (ECF No. 49)

37.    On September 25, 2020, Plaintiff had a phone call with Defendant to discuss the status of Defendant's outstanding discovery obligations. Plaintiff indicated that after PAGA documents were produced, Plaintiff sought to conduct PMQ depositions using those documents. Plaintiff served a PMQ deposition notice that day, requesting that the parties meet and confer regarding the categories. Defendant rebuffed the efforts, indicating it would provide a written substantive response.

38.    On October 1, 2020, Plaintiff learned that the case had been reassigned from Judge Brennan to Judge Peterson. (ECF No. 51)

39.    Between September 23, 2020 and October 12, 2020, Plaintiff: (1) reviewed Defendant's initial production of documents, (2) discussed internally about perceived deficiencies in the production, (3) prepared a draft notice of motion re discovery disagreement as to Defendant's compliance, and (4) conferred about Defendant's redactions, including a request for a privilege log. Plaintiff estimates this took approximately 6.4 hours of attorney time.

40.    By October 13, 2020, Defendant did not produce any PAGA documents as ordered by Judge Brennan. Between October 13, 2020 and October 16, 2020, Plaintiff: (1) corresponded with Defendant about the lack of PAGA production, (2) conferred internally about Defendant's lack of compliance, (3) conferred and agreed with Defendant to participate in a telephonic informal discovery conference (IDC), (4) drafted a discovery brief for the Court, and (5) participated in an IDC with Judge Peterson. Plaintiff estimates that this took approximately 4.2 hours of attorney time.

41.    On October 20, 2020, Defendant produced documents bates stamped as IASCO 2017-3481 that purported to be all responsive documents. Upon reviewing the PAGA documents, Plaintiff noticed that there were a number of deficiencies with Defendant's production. Even though the PAGA period covered November 2016 to the present, the documents produced were deficient because:

A.    Defendant produced payroll records only from 2016-18, but did not include payroll records for 2019-20;

B.    Defendant produced paystubs for 2019-20, but did not produce paystubs

10

1  for 2016-18;

2          C.      Defendant did not produce any time records; and

3          D.      Defendant did not comply with the Court's October 29 order which

4  provides that "All documents shall be produced with a unique identifying number to be used in

5  place of any names. Each individual's unique identifying number shall be consistent as to all

6  documents used."

7          42.     Between October 20, 2020 and October 28, 2020, Plaintiff: (1) reviewed

8  Defendant's first attempt at PAGA production provided on October 20, 2020, (2) discussed

9  internally about the production's deficiency and its consequence on Plaintiff's anticipated PMQ

10  depositions, (3) met and conferred with Defendant about its continued lack of compliance with

11  the court order, (4) conferred and agreed with Defendant to participate in another telephonic IDC,

12  (5) drafted a discovery brief re Defendant's compliance, and (6) participated in a second IDC

13  with Judge Peterson. At the IDC, Defendant would not commit to allowing Plaintiff to take PMQ

14  depositions, suggesting that Defendant would seek a protective order. Moreover, Defendant

15  explained that there were technical issues with production related to Google documents, but gave

16  no assurances that additional responsive documents were forthcoming, or when it expected to

17  comply with the court's order. Judge Peterson authorized Plaintiff to file a motion to compel as to

18  the PAGA documents and PMQ deposition. Plaintiff estimates that this took approximately 7.6

19  hours of attorney time.

20          43.     On November 20, 2020, Defendant provided supplemental PAGA production,

21  bates-labeled as IASCO 3482-6979. However, Defendant's production again failed to fully

22  comply with Judge Brennan's order. Specifically. Plaintiff noted that Defendant failed to produce

23  any timecards for the PAGA period of November 2016 to September 2018.

24          44.     At the hearing on Plaintiff's motion for sanctions on November 24, 2020, the

25  Court ordered that Defendant was to produce all payroll records, paystubs, and time records from

26  November 2016 to present that are responsive to Plaintiff's RFP 2 by December 4, 2020, with a

27  verification that describes the search that was conducted for responsive documents also due by

28  that time. (ECF No. 65) The Court also ordered that Defendant produce Shannon Feist for

11

1    deposition on December 3, 2020 and Diane Eakes for a PMQ deposition on December 10, 2020.

2    (ECF No. 65)

3         45.     Between October 29, 2020 and November 24, 2020, Plaintiff: (1) discussed

4    internally about Defendant's continued non-compliance with Judge Brennan's order, (2) drafted

5    the motion for sanctions authorized by the Court, (3) conferred with Defendant on a joint

6    stipulation to amend scheduling order to allow for additional time to complete fact-discovery,

7    providing Defendant with additional time to produce additional PAGA documents and make

8    PMQ available for deposition, (4) met and conferred with Defendant re a joint statement of

9    discovery disagreements, (5) reviewed Defendant's supplemental PAGA production provided on

10    November 20, 2020, and (5) appeared for an initial hearing on the motion for sanctions. Plaintiff

11    estimates that this took approximately 25.6 hours of attorney time.

12         46.     On December 3, 2020, Plaintiff conducted the ordered deposition of Mr. Feist, and

13    discovered that Defendant maintained flight logs and flight billing records as a system for

14    tracking time hours worked by flight instructors. Defendant would later contend in its December

15    4, 2020 verification that "No time cards exist for employees referred to in this litigation as "Flight

16    Instructors" for the time period from November 2016 through September 2018. That meant that

17    the flight logs and flight billing records represented the only document that could reliably show

18    any hours worked by flight instructors during the PAGA period of November 2016 through

19    September 2018.

20         47.     On December 4, 2020, Defendant provided to Plaintiff substantial supplemental

21    production, IASCO 6890-9189 (employee paystubs for 2017-18 and payroll records for 2019) and

22    IASCO 9190-9390 (payroll records for 2020), nearly 2,500 pages of PAGA documents that

23    should have been produced long ago.

24         48.     On December 8, 2020, the Court conducted a second hearing on the motion for

25    sanctions. Defendant rejected Plaintiff's reasoned explanation as to why the flight logs and flight

26    billing records fell within the scope Judge Brennan's prior order. The Court ordered that the

27    parties submit supplemental briefing on this issue, and continued the hearing.

28         49.     On December 16, 2020, the Court conducted a third hearing on motion for

sanctions, and authorized Plaintiff to file a declaration describing reasonable expenses incurred in seeking Defendant's compliance. The Court ordered that Defendant shall produce all flight logs from November 2016 to present. The Court also ordered that Defendant shall also produce all flight billing records from November 2016 to present that contain information bearing on the number of hours worked by flight instructors by January 6, 2021. This was memorialized in a December 21, 2020 order. (ECF No. 70)

50.    Between December 3, 2020 and December 16, 2020, Plaintiff: (1) reviewed Defendant's supplemental PAGA production provided on December 4, 2020, (2) met and conferred with Defendant re continued non-compliance with Judge Brennan's order due to Defendant's failure to produce any flight logs or flight billing records relevant to PAGA, (3) corresponded with the court clerk re scheduling for the sanctions hearing, (4) reviewed documents in preparation for PMQ deposition for PAGA topics, (5) conducted PMQ deposition for PAGA topics notwithstanding deficient production and a witness, who was not reasonably prepared to serve as a PMQ on PAGA topics, (6) conducted deposition of Shannon Feist in which he discussed flight logs and flight billing records, (7) drafted a supplemental brief as to whether the flight logs and flight billing records fell within the scope of Judge Brennan's order, (8) participate in a second and third hearing on the motion for sanctions, and (9) conferred internally about the PAGA production, supplemental brief, and arguments for the sanctions hearings. Plaintiff estimates that this took approximately 22 hours of attorney time.

51.    Between December 21, 2020 and December 23, 2020, Plaintiff conferred internally about the declaration for attorneys' fees in support of the motion for sanctions and drafted the declaration ordered by the Court. Plaintiff estimates that this took approximately 8.1 hours of attorney time.

52.    In total, Plaintiff claims a total of 81.2 total hours of attorney time was reasonably spent to secure Defendant's compliance with the September 25, 2020 Order of the Court regarding production of discovery.  In total: Dat Tommy Phan, Esq. incurred 52.4 hours of time, Brandon Ruiz, Esq. incurred 4.2 hours of time, and I incurred 17.3 hours of time.

53.    I have carefully reviewed the time records provided by Mr. Phan and Mr. Ruiz.  I

13

have also reviewed my own time records. I have reviewed each of these time records to ensure that these records are an accurate reflection of the time actually spent to obtain the complete obedience of Defendant and its attorney to the Court's September 23, 2020 order.

54. As of today, we still have not obtained all documents that could and should have been produced by IASCO as to the time worked by flight instructors and, thus, are still unable to calculate an accurate estimate of damages as to Plaintiff's claims under the Private Attorneys' General Act.

55. True and correct copies of the time records of each of the timekeepers, Dat Phan, Brandon Ruiz, and myself, are attached hereto and incorporated herein as Exhibits A, B, and C respectively.

**MY REQUESTED HOURLY RATE OF $800 IS SUPPORTED**

**BY AWARDS IN OTHER COURTS AND JUSTIFIED BY MY BACKGROUND,**

**EXPERIENCE, REPUTATION, AND SKILL**

56. In this case, I am requesting an hourly rate of $800 per hour. I believe such a rate is reasonable in the Sacramento legal market for my background, experience, and skill. Such a rate is also consistent with the hourly rate that I have received in Los Angeles and San Bernardino courts as described herein.

57. On or about September 28, 2009 – over ten years ago – the Honorable Richard Rico in Los Angeles Superior Court awarded discovery sanctions on my behalf at an hourly rate of $500 per hour.

58. Since that time, I have been regularly approved at increasing hourly rates consistent with the $990 hourly rate that is my standard hourly rate for the Los Angeles regional legal market. For example, in 2011 (nine years ago), I received attorneys' fees in a class action settlement, *Winters v. Base Production, Inc.* (L.A.S.C. Case No.: BC410650). The attorneys' fees were capped at a set percentage of the settlement amount. The Court, however, took judicial notice of my hourly rate at that time of $595 per hour and accepted that rate as within the range of attorneys of comparable background and ability.

1    59.    In 2013, I settled a fee claim in a case. Since the terms of this resolution are

2    confidential, I am not able to detail any identifying factors about this lawsuit.  What I can say is

3    that the dispute was resolved amicably with defendant agreeing to pay 90 percent of the legal fees

4    requested.  Defendant's attorneys accepted my then hourly rate of $635 per hour during the

5    negotiations.  On or about August 16, 2015, I resolved another fee claim for a case solely for the

6    appeal before the California Second Circuit Court of Appeal where I had a large role in drafting

7    and arguing the appeal.  My regularly hourly at that time of $730 per hour was also accepted.

8    60.    In the case of *Luste v. Dr. Jeffrey Tarranto Eyecare, A Professional Optometric*

9    *Corp.*, I was approved at an hourly rate of $790 an hour in a contested Motion for Attorneys' Fees

10    on or about June 7, 2016 (L.A.S.C. Case No. BC593577).

11    61.    In *Luis v. Columbia Sussex Management, LLC* (L.A.S.C. Case No. BC524461),

12    the Court noted my hour 2018 hourly rate of 2018 an hour as being requested and approved exact

13    amount of the attorney's fees sought in the case as being reasonable.

14    62.    My 2018 hourly rate of $880 an hour was accepted in an Order in *Vinson v.*

15    *County of San Bernardino* (San Bernardino Superior Court Case No. CIVDS1209922) signed

16    November 1, 2018. The Court approved the attorney's fees requested, including the requested

17    hourly rates as "fair, reasonable and adequate."

18    **THE HOURLY RATE OF $600 PER HOUR FOR BRANDON RUIZ IS JUSTIFIED**

19    **BASED UPON HIS BACKGROUND, EXPERIENCE, REPUTATION, AND SKILL**

20    63.    For Brandon Ruiz, Plaintiff is requesting an hourly rate of $600.  Currently, Mr.

21    Ruiz's published 2020 hourly rate is $720 per hour.  The requested hourly rate for Mr. Ruiz

22    represents a fair billing rate for his educational background, experience, and expertise.

23    64.    Mr. Ruiz graduated from the University of California, Santa Cruz in Santa Cruz,

24    California in 2006 with a bachelor of arts degree in Sociology, earning high honors in his major,

25    and honors for my degree.  Mr. Ruiz competed for and obtained spots in several highly selective

26    programs, including the University of California Center in Sacramento and the Hispanic

27    Association of Colleges and Universities Hispanic National Internship Program. Upon his

28

graduation in June 2006, Mr. Ruiz was offered and accepted membership in the *Phi Beta Kappa* society.

65.    Mr. Ruiz received his law degree *cum laude* from the University of Illinois College of Law in 2009.  Mr. Ruiz took the Bar Exam in July of 2009 and passed the Bar, and was subsequently admitted to the practice of law in November, 2009. While a student at the University of Illinois, he participated in several moot court competitions, and was recognized for presenting the best legal brief in the University of Illinois' Environmental Moot Court competition.

66.    Since 2009, Mr. Ruiz has practiced law full-time, representing almost exclusively plaintiffs in employment-related litigation. In that capacity, Mr. Ruiz has tried four employment arbitrations and jury trials to verdict.  Mr. Ruiz has prosecuted a multitude of complex employment matters including wrongful termination, employment discrimination, sexual harassment, wage and hour, and whistleblower retaliation suits.  Mr. Ruiz has litigated cases in various forums, including the Superior Court, the Court of Appeal, and the State Personnel Board.

67.    Mr. Ruiz is currently a member of CELA and the Consumer Attorneys' Association of Los Angeles (CAALA). He has attended the conferences for each organization on an annual basis and keep abreast of recent developments in the law.

68.    Mr. Ruiz is a current board member of the CELA Barristers' Section, which assists and trains new lawyers in litigation and trial skills.

69.    Mr. Ruiz has obtained a certificate in Reasonable Attorneys' Fees from the National Association of Legal Fee Analysis ("NALFA") by completing NALFA's continuing legal education course on the evaluation and analysis of reasonable attorneys' fees.

70.    Mr. Ruiz has been designed as a Super Lawyer for the years 2020 and 2021.  He has achieved this recognition is a very brief period of time – making this achievement all the more remarkable.

71.    Mr. Ruiz's hourly rate of $635 for 2018 was noted in *Luis v. Columbia Sussex,* as the Court approved the attorney's fees requested in the case as reasonable. Mr. Ruiz's hourly rate of $635 for 2018 was also approved as part of the award for all fees requested in *Arredondo v.*

16

1    *Durabag Company Inc.* (Orange County Superior Court Case No. 30-2015-00771767-CU-OE-

2    CXC.

3    **THE HOURLY RATE OF $395 PER HOUR FOR DAT PHAN IS JUSTIFIED BASED**

4    **UPON HIS BACKGROUND, EXPERIENCE, REPUTATION, AND SKILL**

5        72.    For Dat Phan, Plaintiff is requesting an hourly rate of $395.  The requested hourly

6    rate for Mr. Phan represents a fair billing rate for his educational background, experience,

7    reputation, and expertise.

8        73.    Mr. Phan graduated from the University of California, Berkeley in in 2011 with a

9    bachelor degree in Business Administration, and minors in Public Policy and Asian American

10    Studies. Mr. Phan competed for and obtained spots in several highly selective programs,

11    including the Public Policy and International Affairs Fellowship, Ford Foundation Viet Fellows

12    Program, and Undergraduate Research Apprenticeship Program.

13        74.    Mr. Phan received his law degree from the University of California, Los Angeles

14    in 2016.  During law school, Mr. Phan focused on labor and employment law, serving as a legal

15    extern for the Ninth Circuit Court of Appeals, National Labor Relations Board, UNITE-HERE,

16    Local 11, and as a summer associate for Weinberg, Roger & Rosenfeld.  After completing a year-

17    long post-graduate fellowship with Public Counsel, the nation's largest pro bono law firm, Mr.

18    Phan was admitted into the California State Bar in 2017.

19        75.    After completing his fellowship with Public Counsel, Mr. Phan started with

20    Hennig Ruiz & Singh in September 2017. At the firm, Mr. Phan practices law full-time

21    representing almost exclusively individual plaintiffs in employment-related litigation and class

22    actions.

23        76.    Mr. Phan is currently a member of the California Employment Lawyers

24    Association (CELA), Consumer Attorneys Association of Los Angeles, Asian Pacific American

25    Bar Association of Los Angeles, and Vietnamese American Bar Association of Southern

26    California. Mr. Phan currently serves as the Co-Chair for CELA Public Employment Committee.

27    ///

28    ///

17

**SANCTIONS ARE REQUESTED IN THE AMOUNT OF $37,058**

77.    I am generally familiar with the Sacramento legal market.  My firm currently has three active cases in litigation in Sacramento Superior Court in addition to this case.

78.    I, along with Mr. Phan, sought out the advice of other attorneys in the Sacramento legal market to ensure that our requested hourly rates were accurate for the Sacramento market.  Our requested hourly rates are in line with that of comparable attorneys in employment law in Sacramento.

79.    I also consulted the National Association of Legal Fee Analysis' 2020 Annual Survey of Legal Fees.  NALFA's annual national survey is a useful guide to attorney's fees nationwide.  I compared the mean and median hourly rates nationwide as well as in selected legal markets to ensure that our requested hourly rates were reasonable.

80.    At the requested hour rate of $395 per hour for Mr. Phan, $600 per hour for Mr. Ruiz, and $800 for myself, I calculate a total lodestar of $37,058 ($395 X 52.4; $600 X 4.2 $800 x 17.3).

81.    Plaintiff is requesting $37,058 in sanctions against Defendant IASCO and its counsel for the clear and repeated violation of the Court's September 25, 2020 Order.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct of my own personal knowledge, excepting those matters stated under information and belief, in which case I believe them to be true.


Executed this 23rd day of December, 2020, at Los Angeles, California.


By:    /s/ Rob Hennig
        Rob Hennig

# Exhibit A

| Case Name | Date | Task | Time | TimeKeeper |
|---|---|---|---|---|
| Stonecypher | 9/23/2020 | Conferred with BR re:  Hearing on discovery | 0.2 | DP |
| Stonecypher | 9/25/2020 | Conferring with BR re supplemental production | 0.2 | DP |
| Stonecypher | 9/25/2020 | Reviewing defendant's supplemental production | 0.6 | DP |
| Stonecypher | 9/25/2020 | Conferring with RH re supplemental production | 0.1 | DP |
| Stonecypher | 9/25/2020 | Email to opposing counsel re supplemental production | 0.4 | DP |
| Stonecypher | 9/25/2020 | Reviewing email from RH re supplemental production | 0.2 | DP |
| Stonecypher | 9/28/2020 | Video call with RH re supplemental production and depositions | 0.2 | DP |
| Stonecypher | 9/28/2020 | Reviewing email from opposing counsel re supplemental production | 0.1 | DP |
| Stonecypher | 9/30/2020 | Drafting notice of motion re discovery disagreement re motion to compel | 1.5 | DP |
| Stonecypher | 9/30/2020 | Conferring with RH notice of motion to compel compliance with court order | 0.1 | DP |
| Stonecypher | 10/5/2020 | Email to opposing counsel re meet and confer conference re defendant's | 0.4 | DP |
| Stonecypher | 10/6/2020 | Conference call with BR and RH on current case status | 0.1 | DP |
| Stonecypher | 10/9/2020 | Conferred with RH as to call with Joe Breen | 0.4 | DP |
| Stonecypher | 10/13/2020 | Reviewing opposing counsel email re supplemental PAGA production | 0.1 | DP |
| Stonecypher | 10/13/2020 | Reviewing email from client re scheduling of magistrate hearing | 0.2 | DP |
| Stonecypher | 10/15/2020 | Reviewing email from opposing counsel re scheduling of magistrate hearing | 0.1 | DP |
| Stonecypher | 10/15/2020 | Email to opposing counsel re scheduling of magistrate hearing | 0.1 | DP |
| Stonecypher | 10/15/2020 | Conferring with RH re magistrate hearing re defendant's compliance with court | 0.1 | DP |
| Stonecypher | 10/15/2020 | Video call with RH re discovery brief re defendant's compliance with court | 0.2 | DP |
| Stonecypher | 10/15/2020 | Drafting discovery brief for magistrate hearing re defendant's compliance with | 2 | DP |
| Stonecypher | 10/16/2020 | Video call with RH re magistrate hearing re defendant's compliance with court | 0.2 | DP |
| Stonecypher | 10/16/2020 | Participate in telephonic informal discovery conference | 0.7 | DP |
| Stonecypher | 10/16/2020 | Video call with RH re informal discovery conference | 0.3 | DP |
| Stonecypher | 10/20/2020 | Video call with BR re supplemental PAGA production | 0.2 | DP |
| Stonecypher | 10/20/2020 | Video call with RH and BR re supplemental PAGA production | 0.2 | DP |
| Stonecypher | 10/20/2020 | Conferring with BR and RH as to newly produced documents | 0.2 | DP |
| Stonecypher | 10/22/2020 | Video call with RH re PMQ depositions re individual, wage and hour, and | 0.2 | DP |
| Stonecypher | 10/22/2020 | Email to clerk re magistrate hearing | 0.1 | DP |
| Stonecypher | 10/22/2020 | Email to opposing counsel re supplemental PAGA production | 0.2 | DP |
| Stonecypher | 10/24/2020 | Drafting letter brief to the court re discovery disagreements | 1.4 | DP |
| Stonecypher | 10/26/2020 | Call with clerk re magistrate hearing re defendant's compliance with court order | 0.1 | DP |
| Stonecypher | 10/26/2020 | Call with opposing counsel re magistrate hearing re defendant's compliance with | 0.1 | DP |
| Stonecypher | 10/26/2020 | Video call with RH re magistrate hearing re defendant's compliance with court | 0.1 | DP |
| Stonecypher | 10/26/2020 | Video call with RH re magistrate hearing re defendant's compliance with court | 0.1 | DP |
| Stonecypher | 10/27/2020 | Video call with BR and RH Re:  Case review | 0.1 | DP |
| Stonecypher | 10/28/2020 | Telephonic magistrate hearing re defendant's compliance with court order | 0.8 | DP |
| Stonecypher | 10/28/2020 | Video call with RH re magistrate hearing re defendant's compliance with court | 0.2 | DP |
| Stonecypher | 10/28/2020 | Conferring with BR and RH re motion for sanctions | 0.1 | DP |
| Stonecypher | 10/29/2020 | Call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 10/29/2020 | Drafting motion for sanctions | 11.5 | DP |
| Stonecypher | 10/29/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 10/29/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 10/29/2020 | Call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 10/29/2020 | Call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 10/29/2020 | Reviewing email from opposing counsel re joint stipulation to amend scheduling | 0.1 | DP |
| Stonecypher | 10/29/2020 | Reviewing email from opposing counsel re joint stipulation to amend scheduling | 0.1 | DP |
| Stonecypher | 10/29/2020 | Reviewing email from RH re joint stipulation to amend scheduling order | 0.1 | DP |
| Stonecypher | 10/29/2020 | Reviewing email from court re joint stipulation to amend scheduling order | 0.1 | DP |
| Stonecypher | 10/29/2020 | Reviewing email from opposing counsel re joint stipulation to amend scheduling | 0.1 | DP |
| Stonecypher | 10/30/2020 | Video call with BR and HY re motion for sanctions | 0.1 | DP |
| Stonecypher | 10/30/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 11/3/2020 | Reviewing email from opposing counsel re joint stipulation to amend scheduling | 0.1 | DP |
| Stonecypher | 11/3/2020 | Reviewing email from clerk re joint stipulation to amend scheduling order | 0.1 | DP |
| Stonecypher | 11/3/2020 | Reviewing email from opposing counsel re joint stipulation to amend scheduling | 0.1 | DP |
| Stonecypher | 11/3/2020 | Reviewing email from clerk re joint stipulation to amend scheduling order | 0.1 | DP |
| Stonecypher | 11/16/2020 | Reviewing email from opposing counsel re joint statement re discovery | 0.1 | DP |
| Stonecypher | 11/16/2020 | Email to opposing counsel re joint statement re discovery disagreement | 0.1 | DP |
| Stonecypher | 11/16/2020 | Call with clerk re minute order re motion for sanctions | 0.1 | DP |
| Stonecypher | 11/16/2020 | Reviewing email from clerk re hearing on motion for sanctions | 0.1 | DP |
| Stonecypher | 11/16/2020 | Reviewing email from opposing counsel re hearing on motion for sanctions | 0.1 | DP |
| Stonecypher | 11/16/2020 | Conferring with RH re hearing on motion for sanctions | 0.1 | DP |

| Stonecypher | 11/16/2020 | Email to clerk re hearing on motion for sanctions | 0.1 | DP |
|---|---|---|---|---|
| Stonecypher | 11/16/2020 | Email to opposing cousel re joint statement re discovery disagreements | 0.1 | DP |
| Stonecypher | 11/17/2020 | Reviewing email from opposing counsel re joint statement re discovery | 0.1 | DP |
| Stonecypher | 11/17/2020 | Email to opposing cousel re joint statement re discovery disagreements | 0.1 | DP |
| Stonecypher | 11/17/2020 | Call with opposing counsel re joint statement re discovery disagreements | 0.2 | DP |
| Stonecypher | 11/17/2020 | Drafting joint statement re discovery disagreements | 1.8 | DP |
| Stonecypher | 11/17/2020 | Conferring with RH re joint statement re discovery disagreements | 0.1 | DP |
| Stonecypher | 11/18/2020 | Video call with BR re motion for sanctions | 0.1 | DP |
| Stonecypher | 11/19/2020 | Reviewing email from opposing counsel re joint statement re discovery | 0.1 | DP |
| Stonecypher | 11/19/2020 | Email to opposing counsel re joint statement re discovery disagreement | 0.1 | DP |
| Stonecypher | 11/19/2020 | Preparing electronic filing of motion for sanctions | 0.2 | DP |
| Stonecypher | 11/20/2020 | Video call with RH re motion for sanctions | 0.1 | DP |
| Stonecypher | 11/20/2020 | Conferring with RH and BR re PAGA documents | 0.1 | DP |
| Stonecypher | 11/20/2020 | Reviewing email from opposing counsel re PAGA production | 0.2 | DP |
| Stonecypher | 11/23/2020 | Reviewing supplemental PAGA production | 0.6 | DP |
| Stonecypher | 11/24/2020 | Reviewing supplemental PAGA production | 0.3 | DP |
| Stonecypher | 11/24/2020 | Conferring with RH and BR re supplemental PAGA production | 0.2 | DP |
| Stonecypher | 11/24/2020 | Appearing for motion for sanctions | 0.7 | DP |
| Stonecypher | 11/24/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 11/24/2020 | Video call with RH re motion for sanctions | 0.3 | DP |
| Stonecypher | 12/7/2020 | Email to opposing counsel re PMQ depositions | 0.4 | DP |
| Stonecypher | 12/7/2020 | Reviewing supplemental production re PAGA | 0.3 | DP |
| Stonecypher | 12/8/2020 | Video call with BR re motion for sanctions | 0.3 | DP |
| Stonecypher | 12/8/2020 | Appearing for motion for sanctions | 0.8 | DP |
| Stonecypher | 12/8/2020 | Video call with BR re motion for sanctions | 0.2 | DP |
| Stonecypher | 12/8/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 12/8/2020 | Reviewing email from court clerk re magistrate hearing re motion for sanctions | 0.1 | DP |
| Stonecypher | 12/8/2020 | Email to court clerk re magistrate hearing re motion for sanctions | 0.1 | DP |
| Stonecypher | 12/8/2020 | Reviewing email from court clerk re magistrate hearing re motion for sanctions | 0.1 | DP |
| Stonecypher | 12/10/2020 | Reviewing documents in preparation for PMQ deposition | 0.5 | DP |
| Stonecypher | 12/10/2020 | Video call with BR re PMQ depositions | 1.3 | DP |
| Stonecypher | 12/10/2020 | Video call with RH re PMQ depositions | 0.5 | DP |
| Stonecypher | 12/10/2020 | Conduct PMQ deposition re policies and procedures re individual, wage and | 5.7 | DP |
| Stonecypher | 12/14/2020 | Reviewing supplemental production | 0.6 | DP |
| Stonecypher | 12/14/2020 | Email to opposing counsel re supplemental production | 0.2 | DP |
| Stonecypher | 12/14/2020 | Video call with RH Re:  Missing documents from production | 0.2 | DP |
| Stonecypher | 12/15/2020 | Call with opposing counsel re PAGA production | 0.4 | DP |
| Stonecypher | 12/15/2020 | Drafting supplemental brief re motion for sanctions | 2.6 | DP |
| Stonecypher | 12/15/2020 | Call with opposing counsel re PAGA production | 0.3 | DP |
| Stonecypher | 12/15/2020 | Video call with RH re motion for sanctions | 0.2 | DP |
| Stonecypher | 12/15/2020 | Conferring with RH re supplemental brief re motion for sanctions | 0.2 | DP |
| Stonecypher | 12/15/2020 | Conferred with BR Re: Further briefing on sanctions | 0.2 | DP |
| Stonecypher | 12/16/2020 | Participate in hearing on motion for sanctions | 0.6 | DP |
| Stonecypher | 12/16/2020 | Video call with RH re motion for sanctions | 0.1 | DP |
| Stonecypher | 12/21/2020 | Video call with RH re declaration for attorneys fees | 0.3 | DP |
| Stonecypher | 12/21/2020 | Conferring with RH and BR re court order re production | 0.1 | DP |
| Stonecypher | 12/21/2020 | Video call with RH re declaration for attorneys fees | 0.1 | DP |
| Stonecypher | 12/22/2020 | Drafting declaration for attorneys fees | 0.5 | DP |
| Stonecypher | 12/23/2020 | Drafting declaration for attorneys fees | 2.5 | DP |
| Stonecypher | 12/23/2020 | Video call with RH re declaration for attorneys fees | 0.2 | DP |
| | | **TOTAL TIME** | 52.4 | |

# Exhibit B

| Case Name | Date | Task | Time | TimeKeeper |
|-----------|------|------|------|------------|
| Stonecypher | 9/23/2020 | Conferred w/DP re: hearing on discovery | 0.2 | BR |
| Stonecypher | 9/25/2020 | Conferred w/DP re: Court ruling and declarations | 0.2 | BR |
| Stonecypher | 10/6/2020 | Conf call w/RH and DP re: case status and discovery issues | 0.1 | BR |
| Stonecypher | 10/14/2020 | Reviewed emails re: missing discovery | 0.1 | BR |
| Stonecypher | 10/14/2020 | reviewed email from RH to OC re: discovery | 0.1 | BR |
| Stonecypher | 10/20/2020 | Conferred w/DP re: case status, depo rescheduling, and magistrate hearing | 0.4 | BR |
| Stonecypher | 10/20/2020 | Conferred w/DP re: Defendant's new production | 0.3 | BR |
| Stonecypher | 10/20/2020 | Conferred w/DP and RH re: Defendant's new production | 0.2 | BR |
| Stonecypher | 10/27/2020 | Conf call w/RH and DP re: privilege | 0.1 | BR |
| Stonecypher | 10/28/2020 | Conf call with DP & RH Re:  Motion for Sanctions | 0.1 | BR |
| Stonecypher | 10/30/2020 | Conf call w/DP and HY re: sanctions motion | 0.1 | BR |
| Stonecypher | 11/16/2020 | Reviewed emails re: rescheduling sanctions motion | 0.2 | BR |
| Stonecypher | 11/17/2020 | Reviewed Minute Order from Court re: scheduling of sanctions motion | 0.1 | BR |
| Stonecypher | 11/18/2020 | Conferred w/DP re: discovery disagreements and MTC/sanctions | 0.1 | BR |
| Stonecypher | 11/20/2020 | Conf call with DP & RH Re:  Motion for Sanctions | 0.1 | BR |
| Stonecypher | 11/24/2020 | Conf call with DP & RH Re:  PAGA documents produced | 0.2 | BR |
| Stonecypher | 11/24/2020 | Conferred w/DP re: hearing on sanctions and discovery | 0.3 | BR |
| Stonecypher | 12/7/2020 | Conferred w/DP re: appearing at hearing 12/8 | 0.1 | BR |
| Stonecypher | 12/8/2020 | Conferred w/DP re: sanctions hearing | 0.3 | BR |
| Stonecypher | 12/8/2020 | Conferred w/RH re: sanctions hearing | 0.3 | BR |
| Stonecypher | 12/8/2020 | Conferred w/DP re: results of sanctions hearing | 0.2 | BR |
| Stonecypher | 12/15/2020 | Conferred w/DP re: document production and issue/evidentiary sanctions | 0.2 | BR |
| Stonecypher | 12/21/2020 | Conf call with DP and RH as to further PAGA production ordered by Court | 0.1 | BR |
| Stonecypher | 12/21/2020 | Reviewed Court Order re: sanctions | 0.1 | BR |
| | | **TOTAL TIME** | 4.2 | |

# Exhibit C

| Case Name | Date | Task | Time | TimeKeeper |
|-----------|------|------|------|-----------|
| Stonecypher | 9/25/2020 | Conferred with DP as to supplemental production | 0.1 | RH |
| Stonecypher | 9/28/2020 | Conferred with DP as to supplemental production and deposition schedule | 0.2 | RH |
| Stonecypher | 9/30/2020 | Conferred with DH Re: Further MTC for failure to comply | 0.1 | RH |
| Stonecypher | 10/6/2020 | Conferred with DP and BR Re:  Case status | 0.1 | RH |
| Stonecypher | 10/9/2020 | Meet and Confer with OC Joe Breen; Debrief and strategize session with DP as | 0.9 | RH |
| Stonecypher | 10/20/2020 | Conferred with DP and BR Re:  Documents | 0.2 | RH |
| Stonecypher | 10/22/2020 | Conferred with DH Re:  Case status | 0.2 | RH |
| Stonecypher | 10/22/2020 | Review deficient discovery production and statement to OC Joe Breen as to | 0.3 | RH |
| Stonecypher | 10/22/2020 | Review of documents produced by IASCO and communications surrounding | 0.3 | RH |
| Stonecypher | 10/26/2020 | Conferred with DP to prepare for hearing on MTC and sanctions | 0.2 | RH |
| Stonecypher | 10/27/2020 | Conferred with BR and DP as to case status | 0.1 | RH |
| Stonecypher | 10/28/2020 | Attend Hearing Re:  MTC and Sanctions | 0.8 | RH |
| Stonecypher | 10/28/2020 | Conferred with DP as to Hering and defendant's deficient production | 0.2 | RH |
| Stonecypher | 10/28/2020 | Conferred with BR and DP as to MTC and Sanctions | 0.1 | RH |
| Stonecypher | 10/29/2020 | Review with DP as to needed elements for Motion for Sanctions | 0.2 | RH |
| Stonecypher | 10/29/2020 | Multiple communications with DP as to Motion and stategic decisions | 0.8 | RH |
| Stonecypher | 10/30/2020 | Conferred with DP Re:  Motion for Sanctions | 0.2 | RH |
| Stonecypher | 11/16/2020 | Conferred with DP Re:  Hearing on Motion for Sanctions | 0.1 | RH |
| Stonecypher | 11/16/2020 | Reviewed multiple communiations as to joint stipulation to amend scheduling | 0.4 | RH |
| Stonecypher | 11/17/2020 | Reviewed multiple communications Re:  Joint Statement | 0.3 | RH |
| Stonecypher | 11/19/2020 | Review joint statement Re:  Discovery Dispute | 0.4 | RH |
| Stonecypher | 11/20/2020 | Conferred three times with DP Re:  Motion for Sanctions and documents | 0.3 | RH |
| Stonecypher | 11/20/2020 | Reviewed email from OC Joe Breen Re:  Documents | 0.1 | RH |
| Stonecypher | 11/24/2020 | Conferred with DP and BR Re: New PAGA documents | 0.2 | RH |
| Stonecypher | 11/24/2020 | Conferred with DP Re: Motion for Sanctions | 0.5 | RH |
| Stonecypher | 11/24/2020 | Prepare for and attend hearing Re:  MTC and Sanctions | 1 | RH |
| Stonecypher | 12/3/2020 | Prepare for and take deposition of Shannon Feist in which he discusses flight | 0.8 | RH |
| Stonecypher | 12/4/2020 | Send email to OC Joe Breen Re:  Failure to produce flight logs | 0.1 | RH |
| Stonecypher | 12/4/2020 | Review email response of OC Joe Breen as to documents stating he will respond | 0.1 | RH |
| Stonecypher | 12/7/2020 | Send further email to OC Joe Breen as to flight logs | 0.1 | RH |
| Stonecypher | 12/8/2020 | Conferred with DP or BR Re:  Sanctions hearing | 0.4 | RH |
| Stonecypher | 12/8/2020 | Review response from OC Joe Breen stating he will not produce flight logs | 0.1 | RH |
| Stonecypher | 12/8/2020 | Prepare for and attend hearing Re:  MTC and Sanctions | 1.1 | RH |
| Stonecypher | 12/10/2020 | Conferred with DP Re:  depositions | 0.5 | RH |
| Stonecypher | 12/14/2020 | Discuss with Dat Phan supplemental production of IASCO and what may be | 0.2 | RH |
| Stonecypher | 12/15/2020 | Conferred with DP Re:  Motion for Sanctions | 0.4 | RH |
| Stonecypher | 12/16/2020 | Attend Hearing Re:  MTC and Sanctions | 0.6 | RH |
| Stonecypher | 12/16/2020 | Prepare for Hearing -- confer with DP | 0.1 | RH |
| Stonecypher | 12/16/2020 | Review Stonecypher and IASCO briefs in preparation for hearing; | 0.3 | RH |
| Stonecypher | 12/21/2020 | Conferred with DP as to Supplemental briefing | 0.3 | RH |
| Stonecypher | 12/21/2020 | Conferred with DP and BR Re:  Order of Court and next steps | 0.1 | RH |
| Stonecypher | 12/22/2020 | Research, writing and editing Declaration Re:  Sanctions | 0.4 | RH |
| Stonecypher | 12/23/2020 | Research, writing and editing Declaration Re:  Sanctions | 3.4 | RH |
| | | **TOTAL TIME** | 17.3 | |